Margaret H. Williams, Appellee, v. The Prudential Insurance Company of America, Appellant.

534

Opinion filed September 18, 1933.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, JOHN C. ROBERTS and WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

CULLEN, FAUNTLEROY & EDWARDS and M. R. SULLIVAN, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

Lou P. Williams, at the date of his death, July 6, 1931, was the holder of a policy of life insurance in The Prudential Insurance Company of America, appellant herein. The face of the policy was $5,000, and in addition, the contract contained a provision for an accidental death benefit of $5,000, if such death occurred, while the policy was in force, "as a result directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means." Contained also in the same paragraph was the further condition that no accidental death benefit should be payable if the death resulted from certain enumerated causes, "or directly or indirectly from bodily or mental infirmity or disease in any form."

On the day mentioned, Williams, while engaged in a card game in his pool room, was requested by his wife to come to supper, their living apartment being over the pool room. He suddenly became violent, struck

and beat his wife, and struck at an employee who sought to interfere in her behalf; broke up furniture, then went upstairs, overturned the supper table, breaking dishes, and spilling the food over the floor; after which he went to his bedroom, and engaged in loading a rifle. A police officer, who had been called to quell the disorder, went into the hallway leading to his room, told Williams to put the gun down, as he had caused enough trouble. Williams then arose from his chair, said he was going to kill them all, and lifted the rifle to his shoulder, at which the officer shot and killed him.

Action was brought on the policy for its face amount of $5,000, together with the additional accidental death benefit of $5,000. The declaration was in the usual form, to which was pleaded the general issue, and plea of tender of $5,015, the face of the policy and accrued interest. To the special plea, Margaret H. Williams, beneficiary in the policy and appellee herein, filed her replication, accepting the tender to the amount of $5,015, as a portion of her demand, and that as to such amount her claim was satisfied.

The jury returned a verdict in favor of appellee, assessing her damages at $10,015, with interest at five per cent on $5,000 from Sept. 21, 1931, to June 21, 1932. Motion for a new trial was overruled and judgment rendered on the verdict, from which this appeal is prosecuted.

Appellee's theory was that deceased was temporarily insane at the time of, and just before, the shooting took place, hence was incapable of yielding his conscious consent to his own violent acts which caused the calling of the police officer, and resulted in his death; and that his passing in the manner, as indicated, was an accidental death within the meaning of the policy.

If the deceased consciously provoked or induced the acts that caused his death, the result would not be

accidental, for the reason that it would be a natural and probable consequence of his conduct. If, however, he was at the time mentally deranged, to the extent of not knowing or realizing what he was doing, or appreciating the effect, then he was legally irresponsible for his conduct, and his death by violence would be regarded as accidental. *Woodmen of the World v. Dodd* (Tex. Civ. App.), 134 S. W. 254; *Howle v. Eminent Household of Columbian Woodmen,* 118 Ark. 226, 176 S. W. 313; *Employers' Indemnity Corp. v. Grant,* 271 Fed. 136, 20 A. L. R. 1118. Whether Williams was or was not insane at the time was a question of fact to be submitted to the jury under proper instructions.

Proof was offered on the part of appellee, by a doctor and several lay witnesses, that deceased was in fact insane. Appellant objects that there was not sufficient basis for the expression of opinion by the non-expert witnesses. Whether such witnesses have sufficient knowledge to express an opinion as to the sanity of another, is to be determined by the trial court. *Martin v. Beatty,* 254 Ill. 615. We do not think the court erred in permitting the admission of this proof.

The giving and refusal of instructions are also assigned as error. The first given at the instance of appellee told the jury, in substance, that notwithstanding they might believe the insured's death was provoked by his own conduct, yet if they further believed that he was then insane and unable to distinguish between right and wrong, that they should find his death was accidental. It is objected that the legal proposition therein stated is incorrect. Under the authorities previously cited, we are of the opinion that the principle enunciated was right. It is also argued that there was no evidence upon which to base the proposition whether he had sufficient intelligence to distinguish between right and wrong. The opinions of the witnesses, based upon their observation of and contact

with Williams, were before the jury, and it was for the latter to draw therefrom the inference whether he was able to distinguish between right and wrong, and to make their finding accordingly. We do not think the point is well taken.

The court refused to give for appellant an instruction, which was: "The court instructs the jury that in the policy sued on in this case, it is provided that no accidental death benefit shall be payable if the death of the insured resulted directly or indirectly from mental infirmity. And if you believe from the evidence in this case that the death of the insured, Lou P. Williams, was caused directly or indirectly by his own mental condition, at the time in question, then his death was not effected by accidental means, the plaintiff is not entitled to recover, and you should find the issues in favor of the defendant."

The term, "bodily or mental infirmity or disease in any form," as used in the policy, has been construed by the courts of different jurisdictions, and the current of authority appears to be that such words relate to some ailment, disorder or derangement which, in its character, is somewhat fixed and settled, and does not refer to one which is slight or temporary and over in a short period of time, which, when it has been recovered from, leaves the condition of body or mind as it was previous to the disability. *Meyer v. Fidelity & Casualty Co.* (Iowa), 65 N. W. 328; *Brown v. Metropolitan Life Ins. Co.*, 65 Mich. 306, 32 N. W. 610; *Manufacturers' Accident Indemnity Co. v. Dorgan*, 58 Fed. 945, 951.

We are of opinion that even if deceased was insane at the time of the occurrence, such insanity would not be the mental infirmity referred to in the policy, within the rule of the cases cited, unless it was in some degree fixed and settled in its character; and whether or not it was so established, or was merely transitory and

temporary, was a question of fact. The instruction did not leave the question to the jury, but directed a verdict if they found the mental condition of Williams, directly or indirectly, caused his death, without regard to degree or character of mental condition. The instruction was properly refused.

By the second given instruction for appellee, the jury were charged that if they found from the evidence that deceased met his death by external, violent and accidental means, while in good standing under the policy, the verdict should be for the plaintiff, for $10,015, with interest at five per cent on $5,000 from Sept. 21, 1931, to June 21, 1932.

This was clearly wrong. Appellee had, by her replication, accepted appellant's tender of $5,015. This was a satisfaction of her claim to that extent. Thereafter, the sum embraced in the accepted tender was not the subject of litigation, and could not be an element of the jury's award or the court's judgment. *McConaughy v. Huston,* 142 Ill. App. 230. The only moneys in controversy after appellee, by her replication, had accepted the tender, was the $5,000 claimed as the additional indemnity for the alleged accidental death of Williams. The effect of the instruction would naturally be to mislead the jury.

Appellee's third given instruction was: "In this case you must return a verdict for plaintiff, and the only matter for you to determine is the amount which you may believe plaintiff is entitled to recover under the evidence and all the instructions given you by the court."

Here was a peremptory instruction directing a verdict for plaintiff, at all events, notwithstanding a portion of the claim had ceased to be the subject of litigation, and the balance was disputed. Its probable result would be to confuse the jury, cause them to believe that appellant was in the wrong, and incline

them to find for appellee upon the one element of damages remaining in the case, and which was contested. Especially is this true in view of the fact that the only evidence before the jury bore upon the question of the beneficiary's right to recover under the accidental death clause; hence the jury would likely conclude that the court's direction, that they must find for the appellee, was that they must do so upon the only issue before them, upon which there was proof.

Moreover, this was at variance with appellant's fifth given instruction which directed the jury to find the issues for appellant unless they found from a preponderance of the evidence that the death of the insured was caused solely by accidental means; while instruction number three for appellee told them they must find for her, without qualification or restriction except as to amount. The jury would naturally be confused, if not misled, by the conflicting instructions. *City of Macon v. Holcomb,* 205 Ill. 643.

For the errors indicated, the judgment is reversed, and the cause is remanded.

*Reversed and remanded.*