IDA GITTELSON et al., Appellants, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent.

IDA GITTELSON et al., Appellants, *v.* NEW YORK LIFE INSURANCE COMPANY, Respondent.

First Department, May 7, 1943.

*David L. Weissman* of counsel (*Harry Hausknecht* with him on the brief), for appellants.

*Grattan B. Shults* of counsel (*Louis W. Dawson,* attorney) for respondent Mutual Life Insurance Company of New York; *Ronald B. Swinford* of counsel (*Joseph C. Wilberding* with him on the brief; *Ferdinand H. Pease,* attorney) for respondent New York Life Insurance Company.

CALLAHAN, J. The defendants issued insurance policies on the life of Morris Gittelson which contained provisions for double indemnity in the event that death resulted from accidental injury exclusively of all other causes. The policy of the defendant, Mutual Life Insurance Company, stated that such double indemnity " shall not be payable  *  *  *  if such death result *  *  *  directly or indirectly from bodily or mental infirmity or disease of any sort." That of the New York Life Insurance Company stated that the double indemnity " will not apply if the Insured's death resulted  *  *  *  from physical or mental infirmity; or directly or indirectly from illness or disease of any kind."

The insured, Morris Gittelson, for ten years prior to his death on August 13, 1940, had been suffering from a well-recognized

disease known as paralysis agitans, or Parkinson's Disease. He had been receiving payments for total physical disability from these defendants during all that period. Parkinson's Disease is one of a progressive nature. Because of its ravages the insured was unable to raise his arms or care for himself. One of the admitted effects of this disease was to create a great deal of difficulty in walking, and a tendency to fall forward when this was attempted. At times insured tried to walk unassisted, and occasionally had been able to do so, but had been warned not to attempt this further. On the evening prior to his death he had been left unattended after having been seated by a nurse on a chair placed on the porch of the private hospital or nursing home, where he was confined. When the nurse returned after a short absence, Gittelson was found on his face on the floor of the porch at a point twelve or fourteen feet distant from the chair. He had a fractured nose, and had suffered considerable loss of blood. His condition was described as one of surgical shock. A physician treated him and he was placed in bed. Some time early the next morning he died. An autopsy was performed and the physician making same certified that Gittelson had died from " Parkinson's Disease; Generalized Arteriosclerosis; Fibrosis of Myocardium; Fractured Nose; alleged to have fallen at home."

Claims having been presented for double indemnity, and having been rejected, this action was brought by plaintiffs as beneficiaries to recover same. The cause was tried before a court and jury, but at the close of the whole evidence a verdict was directed for defendants. Plaintiffs appeal, asserting there were issues of fact which should have been submitted to the jury.

The evidence disclosed a sharp dispute between physicians called by plaintiffs and those called by defendants as to whether the accident resulting in the broken nose and subsequent condition of shock had been the sole cause of death, or whether the other diseases mentioned had contributed thereto. This contradictory proof clearly presented an issue of fact for the jury. But as to whether double indemnity might be recovered, even if it be found that death was caused solely by the shock resulting from the fall, might depend further on whether death had resulted " indirectly " from Parkinson's Disease, if, in fact, the fall were due to Parkinson's Disease.

At the close of the trial plaintiffs' counsel, in the course of argument, stated to the court: " We do not deny, your Honor, that the Parkinson's Disease may have caused this man to fall,

but we say to you that even if that were so  *  *  *." We do not understand that this statement was intended as a concession that the fall of deceased was due to the Parkinson's Disease. It was merely a statement that Parkinson's Disease might have caused the fall. There was no direct proof as to how deceased came to fall. Appellants now argue that he may have been endeavoring to walk, and tripped over his bathrobe or some other object. The trial record does not support the suggestions. It is barren of proof concerning the clothing worn by deceased, or as to other physical surroundings, other than that deceased was left sitting comfortably in a chair and was found later in the position and with the injuries heretofore indicated. In addition, there was the evidence as to insured's physical infirmities, including a tendency to fall forward because of Parkinson's Disease. If this evidence permitted only one reasonable inference, namely, that the sole proximate cause of the · fall was a symptomatic weakness — a part of the disease which interfered with walking — then the court might well have been required to determine the question as a matter of law. However, when in deciding the nature of an occurrence resulting in death with respect to which only circumstantial evidence exists, more than one inference may be drawn, the question as to whether the occurrence was accidental is ordinarily for the jury. (*Wolfson* v. *Metropolitan Life Ins. Co.*, 289 N. Y. 70.)

This case is not the same as if it were an action depending on proof of negligence, for the issue of " accidental death " is a broader one than that of negligence. (*Bohaker* v. *Travelers Ins. Co.*, 215 Mass. 32, at p. 34.)

Assuming that death came about from a fall which was caused solely by the Parkinson's Disease, the legal question is presented as to whether that disease is to be held an indirect cause of death. The question is a narrow one and is not to be confused with the question heretofore referred to as to whether disease intervened or co-operated in bringing about death. Nor is the question the same as the one frequently considered by the courts as to whether a mere idiosyncrasy or predisposition is to be deemed an infirmity or disease within the meaning of clauses of the nature of those in the present insurance contracts. (See *Silverstein* v. *Metropolitan Life Ins. Co.*, 254 N. Y. 81.)

In posing .our question we assume that death came solely from injuries resulting from the fall, but that the fall itself would not have occurred except that insured was suffering from a well-defined and settled disease, in other words, that the dis-

order causing the fall was not merely a temporary disorder or weakness. Though the inquiry is one concerning causal relation — a search for proximate cause — we find that the search in this instance is circumscribed by a contractual limitation that an indirect cause, if it be a disease, is to be considered a bar to recovery. The solution of our problem requires us to say how far we are to go beyond the immediate cause of death in determining whether a disease bringing about an accident is to be said to be an indirect cause of death. It is evident that if the existent disease did not lead up to or cause the fall, then the disease would not be even an indirect cause where death resulted solely from injuries flowing from the fall. But where disease was the sole, efficient cause of the fall an opposite finding would seem to be required.

It has been pointed out that we are to construe the limitations of an insurance contract in the light of the speech of common men. (*Lewis* v. *Ocean Acc. & G. Corp.*, 224 N. Y. 18.) Considering the present contracts in the light of this rule of construction, we cannot ignore any limitations of liability for which the parties contracted. Here the parties agreed that if disease indirectly caused death it was to bar recovery of double indemnity. Though these provisions would not in common speech or thought be considered to include remote causes or mere passive factors connected with an accident, we cannot say the same as to a fall directly due to the ravages of disease. We think that ordinary men would understand that disease was at least an indirect cause of a death under such circumstances.

This precise question does not appear to have been presented in any of the numerous cases decided by the courts of this State which have been called to our attention. This court considered a somewhat similar question recently in the case of *Moran* v. *Massachusetts Mut. Life Ins. Co.* (263 App. Div. 936). There we affirmed a determination of the Appellate Term of the Supreme Court which, in turn, had affirmed a judgment of the City Court upholding an insured's right to double indemnity. In the *Moran* case (*supra*) the insured was confined in the alcoholic ward of a public hospital, suffering from chronic alcoholism. He had had one convulsion resulting from the disease while in his bed, but had recovered sufficiently to permit him to arise to go into a toilet room alone. While there he suffered a second convulsion, fell and struck his head, receiving a fractured skull from which he died. There was an issue of fact as to whether the alcoholic condition was existent at

the time of the fall to the extent of being a disease or infirmity, or whether it was merely a condition resulting in a predisposition to convulsions. This issue was submitted to the jury, and we upheld a verdict in favor of the insured.

Our attention has been called to several cases decided outside of this jurisdiction, where the question involved was the causal relation of disease to accidental death where death followed a fall induced by disease. One of the leading cases on the subject is *Manufacturers' Accident Indemnity Co.* v. *Dorgan* (58 Fed. 945). The opinion in that case was written by Justice TAFT, then a United States Circuit Judge, and later the Chief Justice of the United States Supreme Court.

The facts involved in that case were that the insured, who was fishing a stream, was found dead from drowning. There was some evidence that he had suffered from a heart condition, but an autopsy did not reveal any heart disease. The jury, in answering specific questions, found that the death was solely accidental and was not contributed to by disease. They found further that, though the insured was unconscious when he fell into the water, this unconsciousness was caused by some temporary affliction. The policy involved provided that it covered only accidental injury or death, and excluded liability if such events were caused directly or indirectly, by or in consequence of vertigo or any disease existing prior to or subsequent to the date of the policy. After reviewing various other phases of the case, and setting forth the facts in the leading English cases of *Winspear* v. *Insurance Co.* (6 Q.B. Div. 42) and *Lawrence* v. *Insurance Co.* (7 Q. B. Div. 216), in both of which cases the fall resulting in the fatal injuries had been induced by a fit suffered by the insured, Justice TAFT said (at page 955): " We now proceed to inquire whether, if the fall of the deceased into the water was caused by fits, vertigo, or any disease, such accidental death could be said, within the meaning of the policy, to have been ' caused directly or indirectly, wholly or in part, by or in consequence of such fits, vertigo, or disease.' In our opinion the adjective ' accidental ' qualifies not only ' injuries,' but also ' death,' and therefore an accidental death by drowning does result from, and is caused indirectly by, fits, vertigo, or other disease, if the fall into the water, from which drowning ensues, is caused by such disease. The exception is broader than the exceptions in the policies considered in the *Winspear* and the *Lawrence* cases, and is made so by the use of the word ' indirectly.' As can be seen from the words of Mr. Justice WILLIAMS quoted above in the *Lawrence* case, if that policy had

provided that it should not apply to an accident to which a fit contributed indirectly, the company would not, in his opinion, have been liable.''

Another leading case on the subject is that of *Bohaker* v. *Travelers Ins. Co.* (cited *supra* on another point). There Chief Justice RUGG of the Supreme Judicial Court of Massachusetts wrote concerning liability, where a fall from a window caused the death of a hospital patient who was suffering from a well-recognized disease. The circumstances were such that the fall might have been caused while the insured was seeking to raise the window or to pass onto a balcony to get air. While the decision in that case was that liability existed because the injuries arising out of the fall were the sole cause of death, in his opinion the Chief Justice noted that the policy involved in that case had no provision barring recovery if some circumstance other than accident '' directly or indirectly '' contributed to the injury.

In considering the foregoing as well as other cases as precedents, care must be taken in noting the varying conditions found in the policies involved, as well as the facts relating to connection between the disease and the accident.

In the present case, it is beyond dispute that Parkinson's Disease was something more than a mere idiosyncrasy or predisposition. It was a flagrant disease which limited insured's physical activities. We are required by the contract provisions to hold that, if it be found by the jury that the insured fell because of the effect of Parkinson's Disease and that such fall would not have occurred were it not for the existence of that disease, the disease was an '' indirect '' cause of death within the terms of the policies.

On the retrial of this action the question as to whether the disease was the proximate cause of the fall may be covered by proper instructions to the jury.

Defendants raise the further contention that there was a failure on the part of plaintiffs to submit a proper proof of loss. In the proof of loss submitted reference was made to the result of the autopsy, and to the death certificate which was attached. Both of these documents gave several causes of death, including several named diseases. We find, however, that the physician's statement attached to the proof of loss clearly indicated a claim that the death was due solely to accidental causes. Plaintiffs were required to submit the death certificates as part of their proof of loss. By so doing they did not nullify the effect of their claim that death was due to accident. (*Berkowitz* v. *New York Life Ins. Co.*, 256 App. Div. 324.)

The judgments should be reversed and a new trial ordered, with costs to the appellants to abide the event.

MARTIN, P. J., UNTERMYER, DORE and COHN, JJ., concur.

Judgments unanimously reversed and a new trial ordered, with costs to the appellants to abide the event.