[Civ. No. 14079. Second Dist., Div. Three. Jan. 31, 1944.]

MARY GERARD, Plaintiff and Appellant, v. CHARLES A. GERARD, as Administrator, etc., et al., Defendants; JEANNE SEGUIN, Respondent; CHARLES A. GERARD, Cross-defendant and Appellant.

Kenneth A. Davis and Henry D. Lawrence for Appellants.

Denio, Hart, Taubman & Simpson and John E. Munholland for Respondent.

SHAW, J. pro tem.—The main question to be determined on this appeal is whether a deed signed by Emelie Cederholm as grantor and running to Chas. Gerard and Mary Gerard as grantees, under date of August 6, 1940, was delivered by the grantor with intent to make it presently operative as a deed passing title to the land described in it. Mrs. Emelie Cederholm was the sister, and Mary Gerard was the wife of Chas. Gerard, who is the defendant Charles A. Gerard. Mrs. Cederholm died August 10, 1940, and Charles A. Gerard was appointed administrator of her estate on September 3, 1940. On January 8, 1941, Chas. Gerard quitclaimed to Mary Gerard all his interest in the property described in the deed of Mrs. Cederholm, so far as it is involved in this appeal, merely to enable her to bring this action. On August 29, 1941, Mary Gerard began this action against Charles A. Gerard as administrator of the estate of Emelie Cederholm, making Jeanne Seguin also a defendant, to quiet plaintiff's title to a part of the property described in the deed of Mrs. Cederholm above mentioned. Defendant Jeanne Seguin filed an answer and cross-complaint to which both Mary Gerard and Charles A. Gerard as an individual were made defendants, in which she alleged that Emelie Cederholm at the time of her death was the owner of all the property described in the deed first above mentioned, that said deed had never been delivered as an effective conveyance, and that the cross-complainant was a sister and heir at law of Emelie Cederholm, and sought to have the deed declared void. The cross-complaint contained other matters, but they are immaterial to the present appeal. The trial court made findings in favor of the defendant and cross-complainant, stating that the deed in question was signed by Emelie Cederholm and handed to Charles A. Gerard in her presence, but that she "did not at any time intend to make delivery of said deed to any person or persons" and "did not make a delivery of said deed or deliver said deed with the intention of conveying any interest to the property therein described unto the cross-defendants herein or either of them, or as to any part of said property" and gave judgment that the deed was void, that the property was a part of the estate of Emelie Cederholm, and that the cross-defen-

dants had no interest therein, except the interest of Charles A. Gerard as an heir. From this judgment both of the cross-defendants appeal.

The law affecting this case was so recently and so well stated, with ample citation of authority, in *Dinneen* v. *Younger* (1943), 57 Cal.App.2d 200 [134 P.2d 323], in which the Supreme Court denied a hearing, that we need do no more as regards the law than refer to and quote briefly from that case. ▇ As there stated, at pages 204 and 205, proof that the grantor "signed and acknowledged the deed and handed the same to the grantee . . . established a prima facie case of complete execution—that is, of delivery with intent to make the grant operative immediately as a transfer of title. [Citing cases.] The presumption of legal delivery, thus created, is not conclusive.

▇ "The concept of delivery involves more than merely physically handing possession of the deed to the grantee or someone on his behalf. [Citing cases.] The act of delivery must be accompanied with the intent that the deed shall become presently operative as such, that is, must be accompanied with the intent to presently pass title, even though the right to possession and enjoyment may not accrue until some future time. (See cases collected 9 Cal.Jur., p. 153, sec. 52.) The rule applies not only where possession of the deed is given to a third person, but also where such possession is given to the grantee directly. [Citing cases.] Intention to part with title is indispensable—that is the factor that gives vitality to the delivery. [Citing cases.]"

▇ Applying the rules there stated to the present case, we must hold that the trial court's finding that there was no effective delivery of the deed is supported by sufficient evidence and is hence conclusive here. Mrs. Cederholm was a resident of Long Beach, California, and so were Mr. and Mrs. Gerard, and her sister, Mrs. Seguin. She also had a brother and a sister in France, whose fate was apparently unknown at the time her deed was signed. Mrs. Cederholm had been on an extended tour, and arrived at Beaverton, Oregon, on June 30, 1940, to visit an old friend, Mrs. Berney, who was the mother of the witness, Mrs. Grace Thompson, and has since died. While at Beaverton, Mrs. Cederholm stayed at the home of Mrs. Thompson. Soon after her arrival there, Mrs. Cederholm became ill and was examined by a physician, who found that she had angina pectoris and

arteriosclerosis and was overweight. About three weeks after she came to Mrs. Thompson's house, Mrs. Cederholm had an embolism in her leg. This caused much pain and she was given morphine for a time. This was discontinued on July 31st and she had no opiate thereafter until after the deed was signed on August 6th. Her leg got worse, the embolism stopping circulation in it, and Mrs. Cederholm was told by the doctor on July 31st that it would have to be amputated, but he did not tell her what were her prospects of recovery from the operation. The next day she asked Mrs. Thompson "do you think this might kill me?" Mrs. Thompson replied, "I don't think so." At that time her leg was black and the skin was falling off and she could see this. About the 29th or 30th of July, Mrs. Cederholm asked Mrs. Thompson to write, and the latter did write, on July 30th, a letter to Mr. and Mrs. Gerard in Long Beach, asking them to come up and bring with them tax bills containing the descriptions of her real estate. The Gerards came as requested, bringing the tax bills, and arriving in Beaverton on August 4th.

On the morning of August 6th Mrs. Cederholm asked Mr. Gerard to get someone to fix up some papers for her, and also asked Mrs. Thompson whom to get. Thereupon Mr. Gerard went away and presently returned with Mr. Gibson, who was a notary public and employed in a bank at Beaverton. There was no lawyer available. Mr. Gibson and Mr. Gerard had some discussion with Mrs. Cederholm. Mr. Gibson then went back to his office, and about noon returned with two deeds which he had prepared, and showed Mrs. Cederholm. One of these was the deed here in question from Mrs. Cederholm to the Gerards and the other purported to convey other property to them. Mrs. Cederholm was in bed, and Mr. Gibson and Mr. and Mrs. Gerard were in the same room with her. Either in the room or standing in and around the doorway of an adjoining room were Mr. and Mrs. Thompson, and Mrs. Thompson's mother, Mrs. Berney. Mrs. Cederholm signed the deeds and they were then signed by Mrs. Berney and Mr. Thompson as witnesses, and handed to Mr. Gerard. On the afternoon of the same day, August 6th, Mrs. Cederholm was taken to the hospital, as had been arranged before the deed was signed. On August 8th the operation was performed upon her, and on August 10th she died.

On the foregoing matters there is no doubt or dispute in the evidence. As to the manual handing over of the deeds

to Mr. Gerard there is some uncertainty. That he received the deed in question is certain; all the witnesses so testified, and he had it and produced it at the trial. But there is much confusion as to the person who handed it to him. Of the six persons present besides Mrs. Cederholm, one, Mrs. Berney, died before the trial and Mrs. Gerard did not testify at the trial. The other four were witnesses. Mr. Gerard testified that after the deeds were signed by Mrs. Cederholm, the notary, and the witnesses, they were handed to him by either his sister or the notary, he wasn't sure which, but thought it was his sister, and if the notary did this, it was done in front of his sister's bed. Mr. Gibson, the notary, had little recollection of the transaction and was unable to say what became of the deed in question after Mrs. Cederholm signed it. Mr. Thompson, who signed the deed as a witness, testified that it was then handed to Mr. Gerard, in whose possession he saw it, but did not know who handed it to him. Mrs. Thompson testified that after all the signatures were on the deed she saw it in Mr. Gerard's hands, that one of the witnesses, she did not say which one, handed it to him and that Mrs. Cederholm observed the procedure.

There was very little testimony of any expression by Mrs. Cederholm of her purpose or intent regarding the deed. Mr. Gerard testified that she did not discuss the matter with him, that at Beaverton he did not discuss any business with her at all except that on the morning of August 6th she said she wanted to make out some papers to him, not saying what they were and asked him to get someone to attend to it. He testified further that when he brought Mr. Gibson back Mrs. Cederholm said to Mr. Gibson that "she wanted to make out some deed to me." Although asked about conversation after Mr. Gibson came back with the deeds, Mr. Gerard testified to nothing of substance, and stated that nothing was said by her about the deeds when they were handed to him, and that she never mentioned the deeds to him thereafter. He testified that about a year before she died, when she was apparently in good health, she told him she intended to leave everything to him; that the two deeds which she signed included all the real property which she owned, and that an hour or so after the deeds were signed she also signed checks in blank on the banks in which she had accounts and handed them to him, saying, "you get that money out before them

people in Long Beach get it. . . . I want you to have it.'' These checks could not be cashed after her death, and this was the reason for Gerard's application to be appointed as administrator of her estate. Mr. Gerard further testified that at the time she handed him the checks, she also said ''I want you to give that 16th Street house to Jeanne. I want her to have the home.'' Jeanne was Mrs. Seguin, and the 16th Street house was a part of the property described in the deed here in question. At some time unspecified she asked Gerard to help out the people in France.

The notary, Mr. Gibson, testified that he had some conversation with Mrs. Cederholm both before and after he drew the deed, but had very little recollection of it. However, he did testify, in response to a question whether Mrs. Cederholm said anything in his presence about why she executed the deed, that she said, ''That she was going to the hospital; she deeded this to Mr. Gerard and he would know what to do with the property if anything happened to her,'' and he answered ''Yes'' to a question, ''But you do definitely recall her telling you that she was executing this deed because she thought that Mr. Gerard—— because Mr. Gerard knew what she wanted him to do?'' Mrs. Thompson overheard the conversation in which Mrs. Cederholm asked Mr. Gerard to give the 16th Street house to Jeanne, and testified to it in substantially the same words used by Mr. Gerard. Although she observed other conversations between Mrs. Cederholm and Mr. Gerard and Mr. Gibson, she either did not hear or could not remember further parts of them. This witness also testified that at some unstated time, apparently before the deeds were signed, Mrs. Cederholm ''told me her husband died two years before, she told me just through some small slip-up it had been, she said, an awful mess, and she said she did not ever want that to happen to her property.'' Mr. Thompson, who was present when the deed was signed and handed to Mr. Gerard, did not hear Mrs. Cederholm say anything about it.

Mrs. Seguin testified that when Mr. Gerard returned to Long Beach after Mrs. Cederholm's death, he told Mrs. Seguin that Mrs. Cederholm had made ''some sort of a will,'' and in this she was corroborated by her daughter, Lily Seguin. Mrs. Seguin also testified that several weeks later Mr. Gerard told her, ''Mrs. Cederholm had signed some papers. . . . He said it was in case she should die. Then if

she lived any, just file papers. Q. He said these papers were signed in case she should die? A. To save some steps. Q. But if she lived we were to tear the papers up? A. Yes, they were." "He said it was to save expenses that she had made these papers in case she dies. He said the sort of will she made was to save expenses in case she died."

From the evidence above summarized the trial court might reasonably conclude that Mrs. Cederholm's intent, when the deeds were signed and delivered to Mr. Gerard, was not to make them presently operative as conveyances of title, but to make something in the nature of a testamentary disposition of her property, to be effective only if she did not recover from her then present illness and the impending operation. If such was her intent the deeds were not completely executed and did not pass title, under the rules above stated. It is true, there is some evidence to support a contrary conclusion, and perhaps some of that above stated may admit of conflicting inferences; but in such a case the trial court's resolution of the conflict is conclusive on appeal.

Appellants further contend that the evidence of statements made by Mr. Gerard after the death of Mrs. Cederholm was erroneously admitted and the judgment should be reversed for that reason. It does not appear that any objection was made to the testimony of Mrs. Seguin on this subject. But assuming that later objections to other testimony on the same subject place appellant in a position to raise the point, it is not well taken. In addition to that already stated, the testimony admitted over objection shows statements by Mr. Gerard to Mrs. Seguin and others of her family, after Mrs. Cederholm's death, that the latter's property was in court and would be divided as the judge decided. The point is argued by appellant as if the testimony related to declarations made by Mrs. Cederholm, but such is not the case. It is undisputed that the deed of Mr. Gerard to Mrs. Gerard, already mentioned, was made merely to enable her to bring this suit against him as administrator, and that he remains one of the parties in interest under the deed of Mrs. Cederholm. Any admissions he may have made against his interest in that respect, are therefore the proper subject of proof here, and for that reason the various declarations were properly admitted, insofar as they tend to show what was the intention of Mrs. Cederholm at the time the deeds were

680

signed and handed to Mr. Gerard. The case is in this respect, also, very much like *Dinneen* v. *Younger, supra* (1943), 57 Cal.App.2d 200, 207, where the court said, after citing cases: ''These cases establish beyond a doubt that where the very question at issue is whether the grantor intended a legal delivery, the subsequent acts and declarations of the parties are admissible. When a grantor or grantee subsequently deals with the property in a manner inconsistent with the theory of an effective delivery, such fact is of considerable importance in determining their probable intent. . . . All we know is, that the parties executed the deeds and handed them to each other. Such 'delivery' is equivocal. It could mean that the parties intended to part with title. It could also mean that in view of the dangers of the contemplated trip the parties intended the deeds to operate as wills and did not intend a present passage of title. Under such circumstances, evidence of their subsequent acts was clearly admissible on the issue of intent.'' So here we have no evidence of any declaration by Mrs. Cederholm at the time the deeds were handed to Mr. Gerard. In the light of all the circumstances such delivery was ''equivocal,'' as the court said in *Dinneen* v. *Younger, supra,* and the evidence was admissible.

The judgment is affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.