Gail GRAVES, Plaintiff-Appellee,

v.

The PENN MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellant.

No. 29, Docket 23520.

United States Court of Appeals Second Circuit.

Argued Oct. 4, 1955.

Decided Nov. 23, 1955.

2. Graham v. Johnson, 109 Utah 365, 172 P.2d 665; Bailey v. Slentz, 10 Cir., 189 F.2d 406; Whittington v. Mayberry, 10 Cir., 190 F.2d 703.

446

Winthrop, Stimson, Putnam & Roberts, New York City (Walter J. Holzka, New York City, of counsel), for defendant-appellant.

Hale Stimson Russell & Nickerson, New York City (Eugene H. Nickerson and Lawrence L. Stentzel, II, New York City, of counsel), for plaintiff-appellee.

Before CLARK, Chief Judge, and MEDINA and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

The Company appeals from a double indemnity verdict for $11,840, with interest, arising out of the fatal shooting of plaintiff's husband, the deceased insured, Lee Graves.

In 1937 the Company insured the life of the deceased in a policy which provided for double indemnity benefits if death "resulted solely from bodily injuries effected directly and exclusively by external, violent and accidental means," providing that such double benefits shall not be payable if the death * * * "resulted directly or indirectly from illness

or disease of any kind or from physical or mental infirmity." The questions here presented are whether on the facts there was any basis for double recovery and whether the jury was properly instructed as to the meaning of the words disease and infirmity as used in the policy.

It is conceded that the insured's death was accidental and that he was mentally deranged on September 8, 1949, when he was shot and killed by a police officer in Suffern, New York. On September 4 Graves had two short conclusions during which he became rigid and shook while lying in bed. He remained in bed for two days. On September 7 his wife, who is the plaintiff, being concerned about his irrational remarks, called the doctor who told her Graves was seriously ill. At the trial the doctor testified he believed Graves was schizophrenic. Later in the evening Graves walked the dog and returned with the dog's collar around his neck. He threatened to kill the plaintiff and a Mrs. Hampden with whom they were living and also threatened to kill the children if they should wake and disturb him. In the early morning Graves left the house, went to a diner in Suffern and proceeded to go berserk. He pounded the counter, threw things, and assaulted one Williams knocking him the 30 foot length of the diner. When police officer Lieutenant Krouse attempted to quiet the insured, the insured hit him with a chair fracturing his skull and causing a brain concussion. Krouse went for help and when he returned the insured, who was by this time alone in the diner, threw a ketchup bottle through the plate glass window. Krouse started toward the diner and as he approached it the insured threw things at him. Krouse fired a warning shot and then the two shots that were fatal.

In August of 1948 Graves had been hospitalized in a sanatorium for about two weeks. The following March he had been a patient at the Psychiatric Division of Bellevue Hospital for about two weeks. At both times he was excited and talked irrationally, expressing grandiose

ideas, but he was not violent. There was also evidence that the decedent was treated by two physchiatrists from 1947 until his death. Plaintiff testified, however, that except for the incidents in August 1948 and March 1949 the decedent had never acted irrationally or expressed peculiar ideas. Another witness who had known decedent for a long time and seen him frequently testified that prior to September 1949 she had never seen him emotionally disturbed or excited.

The Company asserts that Graves' death resulted from a disease or mental infirmity and that the complaint should have been dismissed. We agree with the trial judge's refusal to so rule and his submission of the case to the jury for their determination whether Graves' death resulted from any disease or mental infirmity from which he suffered or whether it resulted from a transient illness.

■ Under New York law, which apparently governs and which both parties treat as governing, plaintiff is entitled to recover if the insured's mental condition was a temporary disorder or disturbance rather than an infirmity or ailment of a more permanent nature. As Judge Cardozo said in Silverstein v. Metropolitan Life Ins. Co., 1930, 254 N.Y. 81, 171 N.E. 914, 915:

"The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men."

Most of the New York cases have dealt with permanent weaknesses which did not amount to disease or infirmity, such as the dormant ulcer of the Silverstein case or an unusual sensitivity to novocaine, Berkowitz v. New York Life Insurance Co., 1st Dept., 1939, 256 App. Div. 324, 10 N.Y.S.2d 106. The principle enunciated in those cases is broad enough to cover temporary disorders as well. Mutual Life Insurance Co. of New York v. Dodge, 4 Cir., 1926, 11 F.2d 486, 59 A.L.R. 1290, certiorari denied, 1926, 271 U.S. 677, 46 S.Ct. 629, 70 L.Ed. 1147;

Manufacturer's Accident Indemnity Co. v. Dorgan, 6 Cir., 1893, 58 F. 945; Meyer v. Fidelity & Casualty Co. of New York, 1895, 96 Iowa 378, 65 N.W. 328. Thus in Gittelson v. Mutual Life Insurance Co. of New York, 1st Dept., 1943, 266 App. Div. 141, 144–145, 41 N.Y.S.2d 478, 481, the court acknowledged the principle in passing, thus:

"In posing our question we assume * * * that insured was suffering from a well defined and settled disease, in other words, that the disorder causing the fall was not merely a temporary disorder or weakness."

Defendant has urged, however, that a mental derangement is always an "infirmity" no matter how temporary or transient it may be. We find no reason why a temporary mental derangement should be an "infirmity" when a temporary physical enfeeblement is not. Directly in point is Williams v. Prudential Insurance Co. of America, 1933, 271 Ill. App. 532, and we think that case is in accordance with the New York rule. The cases of Gittelson v. Mutual Life Insurance Co. of New York, supra, and Mandles v. Guardian Life Insurance Co. of America, D.C.D.Colo.1940, 32 F.Supp. 619, affirmed 10 Cir., 1940, 115 F.2d 994, relied upon by defendant, are not in point. In the Gittelson case the deceased was suffering from Parkinson's disease, obviously a "disease"; the only question was whether it directly or indirectly caused the death. And in the Mandles case the court was not concerned with the permanence of the derangement since the decedent had been adjudged insane and was an inmate in an institution at the time of the accident which caused her death.

■ Whether the insured's condition here was a temporary disorder or a "disease" or "infirmity" was a fact for the jury to find. Mutual Life Ins. Co. of New York v. Dodge, 4 Cir., 1926, 11 F.2d 486, 59 A.L.R. 1290; Berkowitz v. New York Life Ins. Co., 1st Dept., 1939, 256 App.Div. 324, 10 N.Y.S.2d 106. The trial judge carefully and thoroughly ex-

plained the issues to the jury, and submitted to them two written questions:

"Question No. 1: Was the deceased insured at the time he met his death suffering from an illness or disease or a physical or mental infirmity which was somewhat fixed and settled and more than of a slight or temporary nature, and not over in a short period of time, and not of such a nature that when it has been recovered from, leaves the body or mind as it was previous to the slight or temporary condition?"

"Question No. 2: If you have answered Question No. 1 in the affirmative, then answer: Did the death of the deceased insured result directly or indirectly from such illness or disease or mental infirmity?"

The judge instructed the jury that if they answered either of these questions in the negative, their verdict must be for the plaintiff. These questions closely followed the language of the court in Williams v. Prudential Ins. Co. of America, supra.

After some deliberation the jury asked clarification of the words "somewhat fixed," "settled," "slight," and "temporary" used in Question 1, and the judge, after briefly restating the issue, defined them as follows:

"Somewhat fixed" means definitely ascertainable by observation and not of short or transient duration.

The same would be the definition that would be applied to "settled"; an ailment or a condition which is definitely ascertainable by observation and not of a short or transient duration.

"Slight" means short in point of duration of time.

"Temporary" is temporary in the sense that it is a temporary episode and not a recurrent condition which is characteristic or symptomatic of a definite disease or ailment.

Whatever doubts or uncertainties there may have been after the charge were cleared up by the judge's supplemental charge and his definition of the word "temporary." The instructions were in accordance with the applicable law.

The jury answered the first question in the negative and returned a verdict for the plaintiff. As there was ample evidence from which the jury could find that Graves was suffering from a temporary illness and not from a disease or mental infirmity of more permanent nature, and as the jury was fairly and fully instructed, the judgment is affirmed.