372 P.2d 708

**COYNER CROP DUSTERS,** an Arizona corporation, and Elizabeth S. Coyner, Executrix of the Estate of Jack D. Coyner, Deceased, Appellants,

v.

**W. O. MARSH; C. A. Clements; Gene Autry; W. R. Bimson; E. Ray Cowden; G. C. Taylor; M. T. Clemans, Trustee for W. J. Clemans, III, and Charles Clemans; W. J. Clemans, Trustee for Mark Twain Clemans, Jr., Barbara R. Clemans, and Virginia L. Clemans; A. Boyd Clements; Cynthia Sue Clements Tubbs; John Doe and Jane Doe, individually and as co-partners doing business as Marsh Aviation Co.; Carl Nicholson; Leonard Pemberton; Paradise Aviation Company, an Arizona corporation; John Roe and Jane Roe; and Fictitious Corporation, Appellees.**

No. 6543.

Supreme Court of Arizona.

En Banc.

June 29, 1962.

Z. Simpson Cox, L. J. Cox, Jr., Marion R. Smoker, Ira I. Schneier, Phoenix, for appellants.

Snell & Wilmer, Phoenix, for appellee Marsh.

Lewis, Roca, Scoville, Beauchamp & Linton, Phoenix, for appellees Paradise Aviation Co. and Leonard Pemberton.

BERNSTEIN, Chief Justice.

This is a consolidated action in which Elizabeth Coyner, as executrix of the estate of J. D. Coyner seeks recovery for the wrongful death of the decedent, and Coyner Crop Dusters, a corporation, seeks recovery for the destruction of an airplane. Briefly stated, the facts are these: Paradise Airport, an airport situated northwest of Phoenix, Arizona, at the time of the accident was composed of a number of intersecting graded runways used for light aircraft traffic in flight instruction and private flying. Along the extreme western portion of the field a landing strip had been graded for the exclusive use of crop duster pilots, and the various dusting companies using this runway had stacked their insecticide supplies near the northern terminus of this strip. On July 14, 1952, one Nicholson, a duster pilot new in the Phoenix area, flew a plane belonging to the defendant Marsh to the Paradise airport and inquired of the defendant Pemberton, the manager of the field, as to methods of operation on the duster strip. Pemberton told Nicholson that landings and take offs on the duster strip were from north to south or were "generally" from north to south. Nicholson then began his assigned dusting work, and had completed one flight prior to the accident. Both times while Nicholson was loading, Underwood, an employee of Coyner, landed from south to north on the duster strip, and loaded from a pile of insecticide adjacent to Nicholson's loading activity. Nicholson testified that he landed from north to south, but two of the plaintiff's witnesses testified that they observed Nicholson land from south to north himself. Nicholson also testified that he did not observe Underwood's landings. Before Nicholson completed loading the second time Underwood took off to the south again, stirring up a cloud of dust which covered approximately 1000–1300 feet of the crop duster strip. Nicholson waited until the dust had settled enough that he could see to a point where he thought he would become airborne and then commenced his take off run to the south. Before his plane became airborne, Nicholson collided with the aircraft piloted by the decedent Coyner, who had landed on the south end of the crop duster strip and was taxiing toward the insecticide stacks. Coyner received burns in the fire that followed the collision and both aircraft were destroyed. Coyner died four days after the accident from injuries received therein.

In the trial below, judgment was entered upon a jury verdict in favor of the defendants, and plaintiff brought an appeal,

raising numerous assignments of error. This court affirmed the judgment of the lower court, the present writer dissenting, 90 Ariz. 157, 367 P.2d 208 (1962). By timely motion, appellants sought a rehearing which was granted.

Since the original opinion in this case, this court has handed down its decision in Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444 (1962). We there held that the trial court is deprived of the power to instruct the jury as to what its verdict must be, as far as the defense of contributory negligence is concerned, under the provision of our constitution which states:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." Ariz.Const. Art. 18, § 5, A.R.S.

We have also held that the court may not instruct the jury that if it finds certain facts in issue to be true, it must find the plaintiff guilty of contributory negligence, Wolfswinkel v. Southern Pacific Co., 81 Ariz. 302, 305 P.2d 447 (1956), affirmed on rehearing 82 Ariz. 33, 307 P.2d 1040 (1957).

■ In the present case the following instructions were given over the objection of the plaintiff:

"You are instructed that if you find from the evidence that Mr. Coyner failed to exercise due care in ascertaining whether he could safely land and taxi his plane before he attempted to do so, and that such failure proximately contributed to the collision in the slightest degree, then it is your sworn duty to return a verdict for the defendants." (Defendants' Instruction No. 4)

"You are instructed that a person has a duty to exercise reasonable and ordinary care for his own safety. If you find from the evidence that Mr. Coyner negligently placed himself in a position of peril by landing or taxiing onto the runway in question when that runway was obstructed by dust, if you find it was obstructed by dust, and that that negligence, if· any, contributed in the slightest degree to the collision and his death, then you are instructed to find in favor of the defendants." (Defendants' Instruction No. 5)

These instructions, and Defendants' Instruction No. 25, to be discussed hereafter clearly violate the rule established by the case of Layton v. Rocha, supra.

In the original opinion in this case, the court refused to consider the alleged errors contained in these instructions because in its opinion the plaintiffs did not direct the trial court's attention to the errors specified by stating distinctly the matter to

which they objected and the grounds for their objection as required by 16 A.R.S. R.Civ.P. 51(a).[1] In the motion for rehearing, the plaintiffs pointed out that the counsel and court spent 23 hours settling instructions, much of this time without the presence of the court reporter, and directed our attention to the trial court's order denying motion for a new trial wherein that court stated:

"* * * The one assignment which causes the court the most concern is the one with reference to the instruction on contributory negligence. * * *

"Early in the trial, at least at a time prior to the beginning of the settling of the instructions, the court requested that all counsel familiarize themselves with the principles of the Southern Pacific v. Bolen [76 Ariz. 317, 264 P. 2d 401] case which is cited by the Supreme Court in both of the Wolfswinkel opinions. The practical application of the principles in the Bolen case was the basis of the largest area of disagreement in the settlement of instructions."

■ It is quite understandable that this court would overlook such a buried indication of compliance with Rule 51(a)

since the plaintiffs chose to shotgun every conceivable ground of error with some 75 sub-assignments of error. Such a practice makes it very difficult to separate the grain from the chaff. Nevertheless, in fundamental fairness, we must now recognize that the requirement of Rule 51(a) was satisfied by giving "the trial judge the benefit of counsel's best urging * * *", Michie v. Calhoun, 85 Ariz. 270, 336 P.2d 370 (1959).

■ While the errors in the instructions quoted above are sufficient to require a retrial, we will consider other assignments of error for the benefit of the trial court at the new trial. Several of the matters discussed hereafter would not, standing alone, be prejudicial error, nevertheless their cumulative effect was to confuse the jury and deprive the plaintiff of a fair trial.

The plaintiffs have complained that many of the instructions given, including those considered heretofore, direct that the jury find for the defendants if certain facts are found without requiring a finding of every element necessary to such a direction.

■ The use of formula instructions which bind or direct the jury to find in

1. "* * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its ver- dict, stating distinctly the matter to which he objects and the grounds of his objection."

favor of one party if it believes certain evidence or finds certain facts is fraught with danger. Such instructions must be made conditional upon the jury finding all the necessary facts which would result in a decision in favor of one party or the other, Pickwick States Corp. v. Messinger, 44 Ariz. 174, 36 P.2d 168 (1934); Sisk v. Ball, Ariz., 371 P.2d 594 (1962).[2] If an essential fact is omitted, the instruction standing alone is erroneous, Taylor v. Fitzpatrick, 235 Ind. 238, 132 N.E.2d 919 (1956). Whether such error is prejudicial depends on a review of the instructions as a whole. We have often stated that instructions must be considered as a whole, Musgrave v. Githens, 80 Ariz. 188, 294 P.2d 674 (1956), and that if an instruction is incomplete, it is not reversible error if the proper qualifications are given in some other portion of the instructions, Humphrey v. Atchison, T. & S. F. Ry. Co., 50 Ariz. 167, 70 P.2d 319 (1937). The test is whether the jury would be misled as to the proper rule of law, Jost v. Ross, 82 Ariz. 245, 311 P.2d 840 (1957). Where an instruction directs a verdict in favor of one party if certain facts are found, and omits an element necessary to that party's recovery, the jury would certainly be mislead unless another instruction fully explained the missing element and applied its qualifying effect to the deficient binding instruction.

In this case the following instruction was given:

> "If you should find from the evidence that there were rules and regulations at Paradise Airport and that they were in effect on the date of the accident, and if you further find that the rules and regulations required dusting pilots to land and take off from north to south and that Mr. Coyner had knowledge of that procedure, if you find these things, then you are instructed that the defendants in this cause would not have had any legal duty to anticipate that Mr. Coyner would land in violation of the rules and regulations, and if you so find, your verdict must be for the defendants." (Defendants' Instruction No. 25)

■ *If this instruction is based on the theory that where the defendant has no duty he cannot be negligent it is erroneous,* because there was evidence from which the jury could find that the defendant Nicholson violated aspects of his duty to use ordinary and prudent care other than by failing to anticipate that Coyner would land in the manner in which he did.

2. Jordan v. Great Western Motorways, 213 Cal. 606, 2 P.2d 786 (1931); Williams v. Prudential Ins. Co., 271 Ill.App. 532 (1933); Reids Branson, Instructions to Juries §·126 (1960).

If the instruction is based on a theory that Coyner's contributory negligence precluded recovery it is erroneous because it violates the principles of the Wolfswinkle and Layton cases, supra, and also for the reason that it does not express the qualifying rule that wanton negligence on the part of Nicholson would obviate the effects of Coyner's contributory negligence of ordinary degree, Bryan v. Southern Pacific Co., 79 Ariz. 253, 286 P. 2d 761, 50 A.L.R.2d 1 (1955). Although the court had previously instructed the jury that wanton negligence would overcome the effect of contributory negligence, it would certainly be unreasonable to expect that a lay jury would correctly apply that qualification to this instruction which on its face does not concern the subject of contributory negligence.

The jury was also instructed that:

"* * * Before any recovery may be allowed it must appear to you by a preponderance of the evidence that the party charged was negligent in one of the particulars alleged and that the negligence was the sole and proximate cause of the damages of the recovering party." (Defendants' Instruction No. 6)

This instruction, while it does not bind the jury to find for one party or the other, omits the qualification that recovery may be allowed where negligence of both the plaintiff and defendant contributed to the injury if the defendant's negligence was wanton and the plaintiff's only of ordinary degree. In the above form, the instruction could confuse and mislead the jury, especially in view of the unenlightening definition of "sole negligence" given by the court.[3]

The court gave an involved abstract instruction on concurring and intervening cause,[4] and illustrated the relationship between contributory negligence and wanton

3. "And we have had the term 'sole negligence.' That means simply that the only person chargeable with negligence is the person who claims the right to recover."
    At the close of the instructions plaintiff's counsel stated:
    "Mr. Z. Simpson Cox: I may not have my shorthand correct, but I believe the court said that sole negligence means that the only person responsible is the person who claims to have the right to recover.
    "The Court: I think that is a correct statement. You can take exception to it."
4. "Defendants' Instruction No. 24: * * * when it appears that the conduct of two or more persons acting independently and at different times created or contributed to the circumstances out of which injury resulted, the question of proximate or remote cause requires the jury to consider thoughtfully the relationship between the conduct of one person whom for convenience I will call the original actor and the conduct of another whom I shall call the secondary actor and the sequence of events leading to the injury. It is not enough merely to say that the accident would not have happened had it not been for what was done or was not done by one of the parties. It may or may not be that the effect which would have been expected to flow

negligence with a complicated hypothetical lawsuit between his clerk and the court reporter and himself.[5] Abstract and verbose propositions of law in instructing the

from certain conduct was changed by what we call an efficient intervening cause. Of course, the first question to be answered is whether either of the parties was negligent. If either party was not negligent, then he may not be held liable or even if his conduct was a proximate cause.

"If the original actor was not negligent but the secondary actor was, the question narrows down as to whether the secondary conduct was the proximate cause of the injury or event. There, of course, remains the question of contributory negligence if you think that is proper in connection with the particular fact situation. If the original actor was negligent, then, you have to consider whether the effect reasonably to be expected from that negligence was altered by an efficient intervening cause. Was the conduct of the second actor an efficient intervening agency which alone was the proximate cause of the injury, or was that later conduct merely a concurring cause and the conduct of such actor a proximate cause of the injury? As between these two possibilities the test is this: If the original actor foresaw or by exercise of ordinary care would have foreseen the probability of the conduct of the second actor and the probability that the original conduct plus secondary conduct would result in injury to a third person, then the conduct of both the original and secondary actors concurred in proximately causing that injury or event; but if these probable results were not thus foreseen or foreseeable and the immediate cause of the injury was the conduct of the secondary actor, then, it may not be held that the conduct of the original actor was a proximate cause."

5. "What is this intervening cause? Let me give you a brief example before I give you the formal definition. Let me bring into these examples Miss Ackerman, who is my clerk, Mr. Ryan, my court reporter, and myself. We will say that Miss Ackerman was injured without any negligence on her part and she sues Mr. Ryan and me. Let us further assume that both Mr. Ryan and I were negligent. Mr. Ryan was negligent first in point of time, and except for my negligence the facts disclose that his negligence and proximate cause leading from him to Miss Ackerman's injury were present. However, after Mr. Ryan was negligent I was negligent, and my negligence was such that it was also a proximate cause to Miss Ackerman's injury. Now, if both Mr. Ryan's conduct and my conduct combine together to proximately cause her injury, we would both be liable. Here is where the intervening cause comes in. If my negligence was such that it interrupted and ended the proximate cause flowing from Mr. Ryan's negligence to Miss Ackerman's injury, then, my negligence was the new and intervening cause. I would remain liable to respond in damages but Mr. Ryan would not."

* * *

"Again, in the case of Miss Ackerman's lawsuit with Mr. Ryan and me, which was discussed a short time ago, purely hypothetical I assure you, but let's go back again and at this moment she has sued only me. If I was not negligent with proximate cause and if the sole negligence with proximate cause was hers, no recovery. If I was negligent with proximate cause and she was free from negligence with proximate cause, she would be entitled to recover. If we were both negligent with proximate cause and we have contributory negligence, no recovery. It we were both negligent with proximate cause but her negligence, while being contributory negligence, was ordinary negligence, while mine was wanton, then, she could recover against me. Again, we were both negligent with proximate cause and if our conduct was such that both of us were wantonly negligent, no recovery.

jury, even though correct, are not favored in this jurisdiction, Glenn v. Chenowth, 71 Ariz. 271, 226 P.2d 165 (1951), and hypothetical instructions are to be used with extreme care, having due regard to the danger of confusing or misleading the jury, Wolfswinkel v. Southern Pacific Co., 82 Ariz. 33, 307 P.2d 1040 (1957). We think the principles contained in the instructions in question can be conveyed to the jury with greater simplicity and clarity when the case is retried.

■ The trial court gave Defendants' Instruction No. 31 which permitted the jury to weigh the testimony of witnesses in view of the "proven physical facts." Defendants contend that this instruction was justified because the visibility of the decedent Coyner and the defendant Nicholson while seated in their respective aircraft was in issue, and photographs were in evidence which purported to illustrate the visibility over the cowling and between the cylinders of aircraft similar to those involved in the collision. It is true that photographs may show physical facts and refute the testimony of witnesses, Cope v. Southern Pacific Ry. Co., 66 Ariz. 197, 185 P.2d 772 (1947). However, the photographs in this case do not show such physical facts. They are mere illustrations of the opinion of witnesses as to the pilots' visibility and their accuracy depends on how closely the viewpoint of the camera coincided with that of Coyner and Nicholson.[6] Photographs do not show physical facts when the view shown varies with a change of position and the proper position cannot be fixed. Cf. Van Zandt v. Goodman, 181 Or. 80, 179 P.2d 724 (1947); Crocker v. Johnston, 43 N.M. 469, 95 P.2d 214 (1939). The reliability of these photographs is no greater than that of the witnesses who made them, and is properly a matter for the jury to consider.

■ The plaintiffs also complain that certain evidence was improperly ad-

---

"If Miss Ackerman sued Mr. Ryan and me and she was negligent with proximate cause, Mr. Ryan was negligent with proximate cause, but I was wantonly negligent with proximate cause, her contributory negligence would not permit her to recover against Mr. Ryan, but because my negligence was wanton and hers was ordinary negligence, she could recover against me.

"The same general principles apply, Ladies and Gentlemen, in reverse in connection with the counterclaim, that is, the claim of Mr. Marsh against the corporation Coyner Crop Dusters and Mrs. Coyner as executrix, and I won't again go back over and over."

6. The possible range of variance is graphically illustrated by two other photographs submitted by the parties. The plaintiffs' shows a pilot in a duster aircraft sitting straight and tall, with eye level at least a foot above the front edge of the cockpit, the defendants' shows a pilot sitting in a similar aircraft, but slumped down and hunched forward with his eye level only an inch or two above the cockpit edge.

mitted in the trial below. One objection goes to the propriety of admitting the petition for letters Testamentary filed by Elizabeth Coyner shortly after her husband's death, which contains a valuation of certain items in the decedent's estate. Since part of the property listed in the petition was the decedent's interest in Coyner Crop Dusters, and the value of this interest was an issue in the case, the petition was properly admitted as an admission of a party, Walter v. Southern Arizona School for Boys, 77 Ariz. 141, 267 P.2d 1076 (1954); Vecchio v. Metropolitan Life Ins. Co., 224 App.Div. 301, 230 N.Y.S. 131 (1928); Gerard v. Gerard, 62 Cal.App.2d 672, 145 P.2d 702 (1943). A second objection goes to the admission of testimony of Elizabeth Coyner concerning her earnings as an officer of Coyner Crop Dusters following the death of her husband. This testimony obviously was not relevant to any material issue in the case, and its admission was error, Leigh v. Swartz, 74 Ariz. 108, 245 P.2d 262 (1952); Fuentes v. Tucker, 31 Cal.2d 1, 187 P.2d 752 (1947).

While other assignments of error made by the plaintiff suggest possible merit, the absence of discussion in the briefs of many of the multitude of assignments precludes full consideration of the points raised.

The case is remanded for a new trial.

STRUCKMEYER, J., and W. C. TRUMAN, Superior Court Judge, concur.

NOTE: Justice LORNA E. LOCKWOOD, having disqualified herself, the Honorable W. C. TRUMAN, Judge of the Superior Court of Pinal County, Arizona, was called to sit in her stead and participate in the determination of this appeal.

JENNINGS, Justice (dissenting).

For the reasons expressed in the original opinion in this case, 90 Ariz. 157, 367 P.2d 208, and in my dissenting opinion in Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444, I am constrained to dissent.

UDALL, V. C. J., concurs in this dissent.