Maggie Pierce, as Administratrix, etc., of Laura Pierce, Deceased, Respondent, *v.* Village of Ravena, Appellant.

Third Department, July 1, 1942.

*Eugene J. Hummer* [*Daniel H. Prior* of counsel], for the appellant.

*Harry A. Allan* [*John J. Biscone* with him on the brief], for the respondent.

Heffernan, J. The village of Ravena has appealed from a judgment of the Albany Trial Term of the Supreme Court against it and in favor of respondent in the sum of $5,829.95 and also from an order denying its motion for a new trial. On a prior appeal (261 App. Div. 849) this court, by a divided vote, reversed a judg-

ment in respondent's favor and granted a new trial on the ground that the verdict of the jury on the issue of appellant's negligence was against the weight of the evidence.

The action was brought to recover damages for the death of Laura Pierce which occurred in a free public swimming pool maintained and operated by the village. Respondent asserts that death resulted solely because of appellant's negligence.

The pool in question is approximately 420 feet in length and about 216 feet in width. The floor of the pool slopes gradually from the west to the east. Along the bank were numerals or signs indicating the depth of the pool. These numerals were from eight and one-quarter to nine and one-half inches high and were spaced at intervals indicating depths of four, six, eight and ten feet respectively. The ten-foot marker was about forty feet from the easterly end of the pool. At that end, which is the deepest part of the pool, and where the drowning occurred, the floor of the pool slopes from the water line to a depth of ten feet. The ten-foot depth is twenty-three to twenty-five feet from the water line. The pool was maintained by virtue of a permit issued annually by the village health officer after that official made the required inspection.

During the year 1939 the village employed two operators or attendants, one of whom was a man named Tiberia, who was present at the time of the accident out of which this case arises.

Respondent's claim of negligence is based upon allegations that the pool was not properly constructed, that Tiberia was not competent and that his negligence resulted in the death of respondent's intestate.

At about one-thirty or two o'clock in the afternoon of July 26, 1939, Laura Pierce, a child fourteen years of age, accompanied by friends and relatives, came to the swimming pool. This was her first visit and, tragically indeed, her last. Shortly after two o'clock Laura, who was a pretty good swimmer, and Charlotte White, a girl nineteen or twenty years of age, were playing in the northeast corner of the pool — the deepest part. The testimony shows that the girls were jumping up and down in the water near the ten-foot depth. Charlotte came up out of the water after having been under about a minute. Laura was not in sight. Charlotte then notified a man named Cappariella, Laura's brother-in-law, that Laura was in the water. The lifeguard, Tiberia, was then notified.

When the call came he was in a boat at about the middle of the pool. He testified that he immediately sent a young boy around the pool to see if the missing girl could be located. Evidently he was of the opinion that she was not in the water. He also testified

that he dove into the water several times; that he sent to the fire house for an inhalator. A group of boys assisted in the search and one of them found the body at the bottom of the deepest part of the pool. A doctor, who had been summoned meanwhile, after an examination, found that the child was still alive. He described the efforts which he and others made in the work of attempted resuscitation, all of which were unavailing. At about four-thirty o'clock he pronounced the child dead from asphyxiation by drowning. The doctor also said that the youngster could not have been in the water more than ten minutes.

The record discloses the existence of sharply disputed questions of fact. The proof of defendant's negligence is not free from doubt. Respondent contends that appellant was negligent in the construction of the pool, in its supervision and that Tiberia was not only incompetent as a lifeguard but that he failed to exercise reasonable care and judgment after notification of the accident.

In view of the conclusion at which we have arrived it is unnecessary to discuss the facts in detail. Suffice it to say that a second jury having resolved the disputed facts in respondent's favor we would be loath to set aside such a finding as against the weight of the evidence. There are questions of fact in the case for determination by a jury.

Appellant was not an insurer of the lives of those who used the pool. Its only duty was to exercise ordinary care in the supervision, construction and maintenance of the pool. (*Peterson* v. *City of New York*, 267 N. Y. 204; *Curcio* v. *City of New York*, 275 id. 20.) A person who is *sui juris* and engages in such a sport as swimming accepts the dangers inherent in the sport so far as they are obvious and necessary. (*Murphy* v. *Steeplechase Amusement Co.*, 250 N. Y. 479.) The learned trial judge correctly instructed the jury on that subject.

We think the trial judge erred so seriously as to require a reversal of this judgment in permitting a witness for respondent named Weeks to set up a standard and a list of necessary qualifications for a lifeguard.

On the trial and in her brief respondent charges Tiberia with incompetency. The Sanitary Code (Chap. VI, reg. 12) established by the Public Health Council of the State of New York provides, *inter alia*, that " each pool shall be under the personal supervision of an operator or competent attendant trained in life saving procedure * * * "

Tiberia, at the time the child in question came to her death, was twenty-two years of age, weighed 170 pounds and was approximately six feet tall. He had been accustomed to swim from child-

hood.  He had been a member of the Coeymans troop of the Boy Scouts for three years, and during that time received life-saving training.  Before his appointment as attendant in 1939 he was examined as to his qualifications by the village health officer, who is a physician and who in the course of his training had studied resuscitation and life saving.  At college he took the course in life saving given by the American Red Cross and has a certificate as a life saver from that organization.  He gave Tiberia a rigid examination as to his qualifications and certified to the village board that he was qualified for the position of lifeguard.

The respondent was permitted by the testimony of the witness Weeks to establish requirements much different from the provisions of the Sanitary Code and far more stringent than demanded by the rule of ordinary care announced in the decisions to which we have heretofore referred.  Weeks testified that he was a lifeguard by occupation and that for ten years he had been employed by the city of Albany at the municipal swimming pool.  He was asked by counsel for the respondent if he knew whether there were certain qualifications prescribed for lifeguards in this vicinity.  He answered in the affirmative.  Over the objection and exception of the appellant, he was permitted to answer: " On a private pool in this locality, or pools in State parks supervised by the parks, he must have passed a Red Cross Senior Life Saving test at some time or other."  Counsel for the appellant moved to strike out the testimony as incompetent, irrelevant and immaterial.  Weeks was permitted to continue, " The city gives the municipal civil service examination under the civil service secretary, which is supervised by a Red Cross examiner or a Y. M. C. A. physical instructor."  Appellant moved to strike out that testimony.  The motion was denied and an exception taken.  Weeks was asked to tell the requirements for lifeguard in a municipal swimming pool before one can accept a position as lifeguard.  Again appellant's objection was overruled and exception taken.  The following is from the record: " The Court: What are the requirements, if you know?  A. Must have had to pass a Red Cross Senior Life Saving examination — that runs a municipal pool such as the city of Albany — must have passed the tests under the civil service secretary, which is supervised by Red Cross examiner or a Y. M. C. A. physical instructor, to make yourself eligible for the position."  What the custom of municipalities was in this vicinity bore no material relationship to the competency of appellant's attendant, Tiberia.  The question for the jury to determine was whether by his knowledge, experience, training and physique he was competent; whether the appellant had exercised proper care in selecting and employing him.  Tiberia did not have a Red Cross senior

life-saving certificate. He did not pass tests under a civil service secretary, supervised by a Red Cross examiner or a Y. M. C. A. physical instructor to make himself eligible for the position. But if the jury believed Weeks and adopted his standard of eligibility the case ended right there. His testimony removed any issue of the competency of Tiberia. He determined that for the jury.

Respondent now attempts to justify the admission of Weeks' testimony on the theory of custom and usage in the qualifications of lifeguards. It is true that evidence of general usage or custom is admissible in certain cases to establish a standard by which reasonable care may be judged. However, such evidence is usually admitted in cases where the only question involved is whether the use, or failure to use, a certain type of equipment or safeguards for equipment is negligence. (*Shannahan* v. *Empire Engineering Corp.*, 204 N. Y. 543; *Storm* v. *New York Telephone Co.*, 270 id. 103.) Even in those cases where evidence of custom and usage is relevant it should be received merely for what it is worth in view of all the circumstances in the particular case. The jury should be charged as to its inconclusive nature and its weight is entirely for the jury. (*Shannahan* v. *Empire Engineering Corp.*, supra; *Marus* v. *Central Railroad Co.*, 175 App. Div. 783; *Cline* v. *Northern Central Railroad Co.*, 181 id. 203.)

In the case before us evidence of custom and usage elsewhere is not competent. Here the Sanitary Code establishes the standard by which reasonable care may be judged.

The judgment and order appealed from should be reversed on the law and facts and a new trial granted, with costs to abide the event.

HILL, P. J., and CRAPSER, J., concur; BLISS, J., dissents, in an opinion, in which SCHENCK, J., concurs.

BLISS, J. (dissenting). I dissent and vote to affirm the judgment and order appealed from.

This is the second time that the plaintiff has had a verdict. When the case was first before us, we reversed on the ground that the verdict was against the weight of the evidence. Now it is proposed to reverse a second verdict in plaintiff's favor, this time on the ground that an error was committed by the trial court in the reception of evidence as to the custom and practice of other municipalities in the engaging of lifeguards for their swimming pools. Aside from the duty of reasonable care in the maintenance and operation of this municipal swimming pool and the protection of the public whom it had invited to use it, the defendant was charged by the Sanitary Code with the duty of providing that the

pool should be under the personal supervision of an operator or competent attendant trained in life-saving procedure. This rule is general in its language. It sets up no standard for competency nor does it specify what shall be adequate training in life-saving procedure for such attendant. There are many and varied degrees of competency on the part of swimming pool attendants and many and varied standards of proficiency and training in life-saving procedure. What would be a proper standard for a small, relatively shallow pool surely would not be adequate for a large and well-patronized pool. Whether the defendant had complied with this rule was a question of fact for the jury and it surely would have been relevant and of assistance to the jury in determining this question to have shown to it the qualifications and usage of other municipalities as to the competency and the amount of life-saving training required of the attendant. It is always proper to show a practical construction placed upon a statute and it is proper to show the general custom and practice in determining what reasonable care requires. A reasonable construction must be placed upon this rule and it was, therefore, competent to show what amount of training other municipalities had required of its attendants in complying with the rule. This is not for the purpose of varying the provisions of the rule, but rather for the purpose of construing it, especially since it is so general in its terms. Evidence of the ordinary practice or of the uniform custom of persons in the performance under similar circumstances of acts like those which are alleged to have been done negligently is generally competent evidence and this general rule has been applied to a variety of acts. (*Shannahan* v. *Empire Engineering Corp.*, 204 N. Y. 543; *Levine* v. *Blaine Co.*, 273 id. 386.) In *Battelle* v. *Mercantile Warehouse Co.* (139 App. Div. 649) the defendant was charged with negligence in that it failed to employ a watchman and as a result certain goods stored by the plaintiffs with the defendant for hire were stolen. The proofs showed that the defendant did employ a night watchman in common with other merchants and warehousemen in the vicinity and that it was not customary for warehouses to employ any watchman on the inside or to maintain burglar alarms in their warehouses. Surely proof as to the amount of training in life-saving procedure required by municipalities in general under this rule was some evidence as to what this defendant should have done in complying with the rule. I do not mean that it would be absolutely binding but it would be admissible for whatever it is worth. For example, if municipalities in general required their swimming pool attendants to be graduates of certain types of life-saving schools and this defendant had engaged that sort of an attendant, it would be

competent for the defendant to show that custom and its own compliance with it. Likewise it would be just as competent to show the custom if one existed and then to show the defendant's failure to comply with it.

We are all familiar with the general rule that custom and usage may be admitted in the construction of constitutions, statutes and the like. Of course, such custom and usage cannot vary the terms of the statute and cannot be admitted if repugnant to the express terms of the statute, but they are entitled to consideration in determining a doubtful question of construction. I do not believe that any member of our court would be able to say just how much training an attendant should have in life-saving procedure in order to comply with this rule. That was a question of fact for the jury and the parties were entitled to show general custom and usage in this regard to assist the jury in determining whether defendant had complied with the statute.

We should not go out of our way to reverse a second recovery in this action. If there is any doubt about the admissibility of this evidence we should affirm and at least give the plaintiff the right to have the Court of Appeals pass upon it, especially after the plaintiff has won twice in the trial court.

I, therefore, vote to affirm.

SCHENCK, J., concurs.

Judgment and order appealed from reversed on the law and facts, and new trial granted, with costs to abide the event.