# IDA WIEST v. TWIN CITY MOTOR BUS COMPANY.[1]

March 21, 1952.

No. 35,594.

*John F. Dulebohn, Owen A. Johnson,* and *Robert D. Merrick,* for appellant.

*Thomson & Williams,* for respondent.

[1]Reported in 52 N. W. (2d) 442.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying defendant's motion for judgment notwithstanding the verdict or a new trial.

Plaintiff, a housewife, brought this action for damages in district court for injuries claimed to have been sustained by her while riding as a passenger with her daughter on defendant's bus. The accident occurred shortly after 10 a. m. on November 7, 1947, on highway No. 7 near Excelsior, Minnesota. Highway No. 7 is a four-lane, black-top-surfaced paved highway, with a six-foot shoulder elevated from the road surface six to eight inches.

Plaintiff testified that shortly after the bus driver called the bus stop "Fair Oaks" en route to Excelsior there was a loud screeching of brakes, a violent jerk, and the bus "went straight across the highway and hit the embankment on the other side" and jerked her to the floor, causing her injuries. She said that the bus was "going faster" than usual and that the jerk occurred right after the driver put on the brakes. Plaintiff's daughter, Sandra, aged 15, corroborated her testimony as to a loud screeching of the brakes and a sudden jerk of the bus just before it skidded across the road.

The accident occurred on a slight curve of the road. It had been snowing a little that morning, so that the highway was slushy with snow and quite slippery. The bus weighed about ten tons and was equipped with dual rear wheels and about 10½-inch tires.

E. Lee Brown, the bus driver, with 26 years' experience as a driver, described the topographical surroundings as more or less woody all along the highway. He said that just before the bus "went into the skid" the trees along the highway were much thicker than they were at the place where the bus actually skidded. He estimated the speed of the bus at about 28 miles per hour. This testimony as to speed was corroborated by passenger witnesses for defendant. Brown said that he did not "apply any brakes particularly," but "simply tried to swing the bus to the right and straighten the skid but it wouldn't respond." Ruby H. Nichols, a passenger in the bus, testified for defendant that there was no screeching of brakes on the bus just prior to the skidding.

Defendant assigns as error the court's failure to grant a directed verdict; that the verdict was not justified by the evidence and was contrary to law; and that the damages were excessive.

■ Upon a careful review of the entire record, it is our opinion that the verdict should stand. Defendant takes the position that the accident was unavoidable or due to *vis major* or an act of God; that when the bus cleared a certain wooded area to its right along the highway a gust of wind caught the vehicle and caused it to move to the left. Included in the record as one of defendant's exhibits (exhibit 1) is a certificate signed by the meteorologist in charge of the weather bureau in Minneapolis showing that at 10:01 a. m. on the day of the accident the wind speed was 22 miles per hour, with gusts of wind up to 30 miles per hour, and that at 10:28 a. m. the wind was blowing at the rate of 30 miles per hour, with gusts of wind up to 36 miles per hour at Minneapolis. Defendant claims that the wind velocity in intermittent gusts that day went up to 44 miles per hour (defendant's exhibits 1 and 2).

There is a conflict in the testimony as to just what caused the accident. Plaintiff claims that it was the sudden application of the brakes which caused the bus to skid; defendant claims that it was the sudden gust of wind that swerved the bus to the left. There was evidence to support a conclusion that the driver made a severe application of the brakes when the bus began to skid, and the jury might well have concluded that such application constituted a lack of the degree of care which defendant owed plaintiff. The driver's testimony lends support to such conclusion. Although he endeavored to deny the application of the brakes, his denial was qualified, and he endeavored to assert that he relied on the steering gear to get him out of the skid. It was for the jury to weigh the evidence and determine the facts. We cannot say that its verdict is without support in the record, and we find no reversible error in its determination. While defendant was not liable for accidents resulting from ordinary jerks, jolts, and lurches of the vehicle when operated in its usual manner and which are to be expected by a person riding in such vehicle, if plaintiff's testimony is true that there was such

a violent jerk of the bus that it was caused suddenly to turn to the left across the highway and hit the embankment and that as a result she was jerked to the floor and injured, this case would not come within that rule. The jury, by its verdict, appears to have found that her contention was true. See, McMurray v. Twin City Motor Bus Co. 178 Minn. 561, 228 N. W. 154; Burgess v. Crafts, 184 Minn. 384, 238 N. W. 798.

■ Defendant claims that the court erred in admitting certain evidence calculated to incite the passion and prejudice of the jury. On cross-examination of plaintiff by defendant's attorney, she was asked the following question in connection with others pertaining to treatment prescribed by her attending physician:

"Q. He didn't tell you to go to the hospital or anything?
"A. No, I couldn't afford to go to the hospital."

Counsel immediately moved that the answer be stricken, which the court denied. Plaintiff's counsel did not pursue the matter in any way.

While it is elementary that evidence of the wealth or poverty of a litigant in cases like this should not be allowed, we feel that it was error without prejudice, and that the court disposed of the matter in its charge when it admonished the jury not to allow any bias, prejudice, or sympathy to influence its judgment. We do not consider this case in point with Griser v. Schoenborn, 109 Minn. 297, 123 N. W. 823, where this court held it to be prejudicial error to permit plaintiff's attorney to ask his client if he had any other means of support except what he acquired by his labor, to which the witness answered that he did not. In the case at bar, it was defendant's attorney who asked the question that brought plaintiff's response, which, after all, was no statement as to her general pecuniary condition.

■ Defendant argues that there was not sufficient evidence of proof of injury to sustain the verdict. With this we cannot agree. Without attempting to go into great detail as to plaintiff's injuries, the record shows that after the accident on November 7, 1947, she

was taken to the office of Doctors Seifert and Dupont in Excelsior; that she was sick to her stomach; that she had an X ray taken of her right shoulder, was given a sedative, and sent home; that after she got home she was in bed for two weeks; that she suffered pain; and that she still could not lift anything with her right arm at the time of the trial on January 25, 1951. She testified that she had had pain in her back since the time of the accident. In December 1947, Dr. Milton Seifert took an X ray of her back. He testified that the X ray showed a fracture of the fifth lumbar vertebra and a fracture of the eighth thoracic vertebra. Plaintiff testified that up to the time the X ray was taken in Dr. Seifert's office in December 1947 she had never been in any accident except the accident in defendant's bus, and that she had never hurt her back before being in the bus accident. It was the opinion of Dr. Seifert, based on plaintiff's testimony that she had been in no prior accident, that the fractures had been caused by her injury in the bus accident. It must be noted, however, that the doctor did say that the fractures were old and that he could not tell with any degree of certainty when the alleged fractures were brought about.

Contrasted with this was the testimony of defendant's witness, Dr. Cyrus O. Hansen, a specialist in X-ray interpretation and roentgenology, who took X rays of plaintiff on February 24, 1950, over two years after the accident. He said that his X rays revealed no fracture of the spine. When he examined plaintiff's X rays at the trial, he testified that he could find no evidence of fracture or narrowing of the fifth lumbar vertebra, but stated that plaintiff's X rays of the eighth thoracic vertebra showed slight narrowing, which might or might not be a fracture. However, it was his opinion that this narrowing antedated by several years plaintiff's X rays taken 52 days after the accident. Dr. Willard D. White, a witness for defendant, who also examined plaintiff on February 24, 1950, found no objective symptoms of any injury.

Thus, we have the conflicting testimony of the doctors, which left the matter for the jury to consider. It is defendant's contention, based upon the medical evidence produced at the trial, that there

is not sufficient proof of alleged fracture to remove the testimony from mere speculation and conjecture. We cannot agree with this contention. We hold, under the facts and circumstances here, that the court did not err in refusing to direct a verdict for defendant at the close of the testimony.

While the verdict here of $5,000 may be considered as somewhat liberal, we cannot conclude from the record that it is so excessive as to indicate that it was rendered under the influence of passion and prejudice. In a number of cases within recent years, this court has said that in assessing the amount of damages it is permissible for a jury to consider the present low purchasing value of money and the high cost of living. Holz v. Pearson, 229 Minn. 395, 39 N. W. (2d) 867; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327; Kerzie v. Rodine, 216 Minn. 44, 11 N. W. (2d) 771; Bergstrom v. Frank, 213 Minn. 9, 4 N. W. (2d) 620; Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18.

Affirmed.