367 P.2d 208

**COYNER CROP DUSTERS, an Arizona corporation, and Elizabeth S. Coyner, Executrix of the Estate of Jack D. Coyner, Deceased, Appellants,**

v.

**W. O. MARSH et al., Appellees.**

No. 6543.

Supreme Court of Arizona,
En Banc.

Dec. 6, 1961.
Rehearing Granted April 3, 1962.

Cox & Cox and Marion R. Smoker, and Ira Schneier, Phoenix, for appellants.

Snell & Wilmer and Donald R. Kunz, and James H. O'Connor, Phoenix, for appellees Marsh & Nicholson.

Lewis, Roca, Scoville & Beauchamp, Phoenix, for appellees Paradise Aviation Co. and Leonard Pemberton.

JENNINGS, Justice.

In a consolidated action for wrongful death and destruction of an airplane, plaintiffs appeal from a verdict and judgment for defendants. Parties will be designated as in the trial court. Plaintiffs are Elizabeth Coyner, wife of decedent, executrix, and Coyner Crop Dusters, a corporation. Defendants are W. O. Marsh et al., a partnership, Carl Nicholson, Paradise Airport, a corporation, and Leonard Pemberton.

The death and destruction was caused by a ground collision of two crop duster planes on the 'duster strip' at Paradise Airport situated northwest of Phoenix, Arizona. This strip is located at the west side of the airport and runs north and south. Stacked at the north end and westerly side of the duster strip were sacks of insecticide to be loaded in the insecticide planes (biplanes with open cockpits, the front cockpits of which have been converted to hoppers or bins for holding insecticide dust).

On July 14, 1952 the decedent, Jack D. Coyner, of the Coyner Crop Dusters Corporation had just completed a landing on the south end of the strip and was taxiing in a northerly direction toward the insecticide sacks when he collided with another insecticide plane owned by defendant Marsh Aviation Company and piloted by defendant Nicholson.

Nicholson, who was new to the Phoenix area, on July 14, 1952, flew Marsh's plane to the Paradise Airport and inquired of defendant Pemberton, the airport manager, the method of operating insecticide planes off of that airport. Accordingly Pemberton informed Nicholson that landings and take offs on the north-south runway (duster strip) were from north to south. At the same time Pemberton showed Nicholson the rules and regulations containing this information which were at that time displayed on the Administration Building lobby bulletin board.

Thereafter, Nicholson taxied to the insecticide where his plane was loaded by

two loader boys. The record indicates that Underwood, an employee of Coyner Corporation, flew into the duster strip from south to north on two occasions while Nicholson's plane was being loaded. Underwood testified that during these landings which were made in a manner contrary to the instructions received that day by Nicholson, he, Underwood, saw Nicholson standing out away from the Marsh plane with nothing obstructing his view of Underwood's landing. After obtaining his second load of insecticide dust, Underwood took off to the south. His plane blew up a cloud of dust 25 to 30 feet high; air movement of one to three miles per hour was from the southwest. Nicholson waited until he could see clearly the length of the runway that he would use on the take off, i. e., to the point where he estimated he would become airborne. He testified that there was dust beyond that point. The collision took place just short of the point where Nicholson indicated that he would have become air-borne. At the time of the collision Nicholson was traveling approximately 50 mph and Coyner was taxiing at the speed of 7 to 10 mph. Nicholson testified that he did not see Coyner until just a 'few moments' before the crash at which time the planes were about 25 to 30 feet apart.

Plaintiffs bring thirty-seven formal assignments of error many of which are subdivided with the result that a total of approximately seventy-five claimed errors are before this Court for review. To discuss and rule on these assignments seriatim would involve treatise-like proportions. Therefore, we will treat the errors in terms of the general propositions of law and major issues which they bring to focus.

Throughout this opinion we are governed by A.R.S. § 2–208. Aircraft collisions; law governing liabilities which reads as follows:

"The liability of the owner of one aircraft to the owner of another aircraft or to aeronauts or passengers on either aircraft, for damage caused by collision on land or in the air shall be determined by the law applicable to torts on land."

▐ The first principal question involving the applicability of plaintiffs' first proposition of law reads as follows: When the undisputed evidence shows that a defendant is guilty of gross, willful, or wanton negligence, the trial court (a) shall instruct the jury as to the legal effect of such undisputed evidence and (b) shall not give instructions which exclude the legal effect of such negligence.

▐ As an abstract statement of law, plaintiff's proposition is correct. Phen v. All American Bus Lines, 56 Ariz. 567, 110 P.2d 227. However, this abstract consideration does not apply to the instant case which is lacking in premises vital to its

operation. The rule requires undisputed evidence. Evidence may not be characterized as 'undisputed' if it is at variance with facts and circumstances or reasonable inferences to be drawn therefrom, or from other evidence. Burkhart v. Lasley, 182 Okl. 43, 75 P.2d 1124; Warren v. Griffing, 200 Okl. 108, 190 P.2d 1014. The evidence on which plaintiffs rely falls short of such a test. For example, plaintiffs offer as an 'undisputed inference' the conclusion that because Underwood landed from south to north and saw Nicholson that Nicholson by the same token saw Underwood land in this manner. Whereas Nicholson's testimony was unequivocally to the contrary.

"Q. Did you see Mr. Underwood come in? A. No sir.

"Q. If you were told, or if Mr. Underwood stated that while you were loading that first load that he had landed or did land on the duster strip from south to north, would that refresh your memory as to how he got there? A. I seen nobody land in that manner.

"Q. You didn't see Mr. Underwood land at all as you recall? A. No sir.

"Q. Do you recall while you were at the loading area and out of your plane seeing Mr. Underwood land his plane on the duster strip? A. No sir."

■ Plaintiffs argue that the 'to look is to see doctrine', Barry v. Southern Pacific Company, 64 Ariz. 116, 166 P.2d 825, should be applied in this case, and contend that the testimony elicited above to the effect that Nicholson did not see the Underwood plane land is negative evidence and is subject to the negative evidence rule. We must hold otherwise. The witness not only stated that he did not see Underwood land, but that he saw nobody land from south to north. He did not merely state that he 'didn't remember'; rather he answered that he did not 'recall' Underwood's landings for the reason that he did not observe them.

■ Even assuming such evidence to be negative it is not such evidence as is subject to the so-called 'negative evidence rule'. This rule concerns itself with the establishment of the existence or nonexistence of a fact, e. g., whether a certain notice was posted or whether a certain bell was ringing. Jeune v. Del E. Webb Construction Co., 76 Ariz. 418, 265 P.2d 1076; Canion v. Southern Pacific Co., 52 Ariz. 245, 80 P.2d 397. Consequently the rule has no operation herein for we are not concerned here with the existence of the fact in question (i. e. whether Underwood did land from south to north), but with Nicholson's knowledge of that fact (i. e., whether he saw Underwood land). The fact in question, Nicholson's knowledge, was fully met by his repeated testimony that he had no such knowledge, and the jury was entitled to so find.

The evidence is also disputed as to whether Nicholson once landed contrary to instructions received. Then too, plaintiffs lay stress on the 'undisputed fact' that Coyner landed on the 'unobscured' portion of the landing strip ignoring the testimony that dust was present on a portion of Coyner's landing run and that he taxied straight into the dust, beyond the point where apparently he could have removed his aircraft from the runway.

■ Nor is there any merit in plaintiff's assertion that there was a direct violation of General Flight Rules, Sec. 60.31(d), as set forth in plaintiffs' Requested Instruction No. 19. The regulation in question reads:

> "When outside of control zones and control areas, no person shall operate an aircraft in flight when the flight visability is less than one mile."

As this regulation expressly states, it pertains to visability while in flight. Therefore the facts of record do nothing whatever to show a violation of the regulation. Visability was unlimited so far as the general atmosphere was concerned. The dust in question was located only over a portion of the landing strip.

■ No directed verdict was possible for it is universally recognized that before a verdict can be directed, the evidence must be such that reasonable minds could not differ upon the inferences to be drawn from the facts, the propriety of a directed verdict being confined strictly to those cases where reasonable minds cannot so differ. Ong .v. Pacific Finance Corp. of California, 70 Ariz. 426, 222 P.2d 801; Scott v. Scott, 75 Ariz. 116, 252 P.2d 571.

■ Also it appears that plaintiff's argument is based largely on the premise that Nicholson was guilty of gross, willful or wanton negligence, but that Coyner, on the other hand, was not so guilty. In effect, plaintiffs ask that the negligence of Nicholson and the contributory negligence of Coyner be assumed, but seek to overcome Coyner's contributory negligence by invoking the doctrine of Alabam Freight Lines v. Phoenix Bakery, 64 Ariz. 101, 166 P.2d 816, that a finding of wanton negligence, etc., will overcome the bar of contributory negligence. In Butane Corp. v. Kirby, 66 Ariz. 272, 286, 187 P.2d 325, 334, this Court defined 'wanton negligence' as:

> " * * * a reckless disregard of the rights of others or a reckless indifference to results. * * * the intentional doing of an act or failure to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other, but also in-

volves a high degree of probability that substantial harm will result to him."

We feel that Nicholson's conduct cannot be said, as a matter of law, to be within the foregoing definition. Not only were the undisputed facts upon which plaintiffs rely subject to contrary inferences, but there was *other evidence* directly contrary to any inference that Nicholson's conduct was wanton. He specifically inquired of the direction in which he was to take off. He was informed of the regulation in that regard. He took off in the proper direction. He had no knowledge and was under no obligation or duty to anticipate that another airplane would land in the opposite direction, contrary to the regulations in force at the airport. He cleared the field to make certain that his plane would not interfere with any properly landing aircraft. Clearly, if Nicholson's conduct has any of the ingredients of 'wantonness', it was solely a question for the jury and not the object of summary instruction by the trial court.

If Nicholson was guilty of taking off into the dust, it is likewise true that Coyner was guilty of landing in the wrong direction and subsequently taxiing into the dust upon completion of the improper landing. Therefore if the jury could have found one guilty of wanton negligence it could also have found the other to be similarly guilty and the doctrine of Alabam Freight Lines, supra, is thus rendered inapplicable. Most

especially is this true in light of the fact that Nicholson had been advised that he was taking off in accordance with fixed regulations which entitled him to assume that he would encounter no oncoming traffic, while Coyner, on the other hand, was charged on the record with knowledge that a plane might be taking off in his taxiing path at any time. The record shows that he had been previously reprimanded by the witness Pemberton, airport manager, for landing in the wrong direction.

Plaintiffs complain of thirteen separate instructions which they allege were erroneously refused by the trial court. All of these in effect would have instructed the jury to return a directed verdict for the plaintiff. We will not discuss each of these instructions herein for we believe that the substance of each has largely been met in the foregoing. However, on the whole case, this proposition is governed by the rule of appellate review laid down by this Court in Scott v. Scott, supra, 252 P.2d at page 574:

> " * * * Under these rules of law, in order for this court to upset the jury's verdict, it would be necessary to rule, not only that the jury and court below came to an unreasonable conclusion, but also that no reasonable person could have agreed with that conclusion."

■ Plaintiffs' proposition of law I(B) is also predicated on the supposition that all of the material evidence bearing upon the negligence of the actors was undisputed. We have previously discussed this aspect of the evidence. However, plaintiffs' argument under this proposition is not based on undisputed evidence but is based on conflicting evidence. The proposition, in effect, is good law and should be read, if there is any evidence upon which to predicate a finding of wanton negligence, the Court should not exclude the jury from so finding. With this we agree. However, we find that the trial court did not exclude the jury from so finding. The court instructed the jury that in judging the rights and obligations of the plaintiffs they should consider the manner in which Coyner conducted himself. The trial court also instructed the jury that in judging the rights and obligations on the part of each member of the group of defendants composed of Nicholson, Mr. Marsh, Marsh Aviation Co., et al., that the jury should consider the manner in which Nicholson conducted himself for his actions and conduct determined the rights of himself and at the same time each and all of the parties. The court specifically advised the jury that the issue of wanton negligence was being submitted as to Coyner and Nicholson, and thereupon took great pains to instruct the jury in the precise way in which such rule would operate, if such wanton negligence was found, including express instruction that a finding of wanton negligence would overcome the bar of contributory negligence.

Plaintiffs' argument seems to be that because the court gave certain instructions which stated or implied that contributory negligence was a defense, but did not, *at the same time*, mention the effect thereon of a finding of wanton negligence, that these instructions therefore amount to the exclusion of wanton negligence.

■ To require the trial court to cover the 'whole law' in every instruction would so burden the instructions with qualifications and subqualifications as to make them far less intelligible than they generally are. The prime function of the jury instruction is to advise the jury of the applicable law in terms and form which the jury can understand. This the trial court did. Not only did the court instruct as to wanton negligence, but earlier in its instruction, the court admonished the jury not to 'single out' any particular instruction or part thereof, but to consider the instructions as a whole. The court's instructions qualifying contributory negligence if wanton negligence was found immediately followed the court's general instruction as to contributory negligence, so that the jury might immediately associate such qualification with the instructions on contributory negligence.

■ This Court has declared on numerous occasions that jury instructions will not be considered 'piece-meal' on appeal and that they must be considered as a whole, the test being whether, upon the whole charge, the jury will gather the proper rules to be applied in arriving at a correct decision. Daly v. Williams, 78 Ariz. 382, 280 P.2d 701; Musgrave v. Githens, 80 Ariz. 188, 294 P.2d 674. That test was satisfied herein. See also Tenny v. Enkeball, 62 Ariz. 416, 158 P.2d 519.

■ Plaintiffs contend that the court erred in refusing to instruct the jury in the doctrine of last clear chance. Their premise is that the trial court eliminated the same from each of the instructions which plaintiffs also claim excluded wanton negligence. As this Court recently stated in Odekirk v. Austin, Ariz., 366 P.2d 80, 81:

"* * * the doctrine of last clear chance is applicable in this jurisdiction under the following circumstances: 1. (a) The plaintiff has negligently subjected himself to a danger and such negligence has terminated or culminated in a situation of peril from which he could not, by the exercise of reasonable care extricate himself; (b) the defendant saw or ought to have seen the peril of the plaintiff, and (c) the defendant thereafter has a last clear chance to avoid injuring the plaintiff by the exercise of reasonable care and fails to do so. 2. (a) The plaintiff has negligently subjected himself to a danger which he could have avoided by the exercise of reasonable vigilance; (b) the defendant actually saw or knew of the plaintiff's situation and realized or ought to have realized that the plaintiff was inattentive, and (c) the defendant thereafter had a last clear chance to avoid injuring the plaintiff by the exercise of reasonable care and fails to do so."

The record contains no evidence that the defendant in the instant case had the last clear chance to avoid the collision. Notwithstanding the fact that the jury could have found both parties negligent, it appears that there was at best equality of opportunity to escape the collision. The testimony is undisputed that the defendant became aware of the impending danger of collision only "moments" before the happening at which time the planes were about 25 to 30 feet apart. It thus becomes quite evident that thereafter in the light of the speed of each plane, the defendant could not have had a last clear chance of avoiding a collision with the plaintiff by the exercise of reasonable care.

■ Plaintiffs next contended that defendant Marsh's instructions Nos. 4, 5, 10, 25, and one of the court's instructions are in conflict with the case of Wolfswinkel v. Southern Pacific Co., 81 Ariz. 302, 305 P.

2d 477; Opinion on Rehearing, 82 Ariz. 33, 307 P.2d 1040, regarding the constitutional prohibition on contributory negligence as that prohibition bears on jury instruction.

This Court is not required to review the propriety of the foregoing instructions as the plaintiff did not direct the trial court's attention to the errors specified by stating distinctly the matter to which he objected and the grounds for his objection as required by Rule 51(a), Rules of Civil Procedure, 16 A.R.S., which provides as follows:

"* * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection * * *."

We are well aware of the holding in Michie v. Calhoun, 85 Ariz. 270, 336 P.2d 370, wherein the fundamental nature of the purported error in the questioned instruction was sufficient to invoke the discretionary powers inherent in this Court 'to review errors not saved by proper objection'. That case can be distinguished from the instant case on the grounds that the Michie case, supra, contained *three gross errors* in instructions so fundamental that the Court concluded the plaintiff could not have received a fair trial.

The second principal issue raised by plaintiff was whether it was within the province of the trial court to take judicial notice of Exhibit 5, a technical Standard Order issued under the authority of the Department of Commerce of the United States of America, by the Administrator of Civil Aeronautics, under power delegated to him by the Civil Aeronautics Board under express provision of appropriate act of Congress.

Plaintiffs' second proposition of law applicable reads: "Courts may take judicial notice of orders and regulations of the Civil Aeronautics Administration, but not of a departmental act having no such character." Plaintiff's authority for this proposition of law stems from 20 Am.Jur., Evidence, Section 44, which cites the case of Spring v. American Telephone & Telegraph Co., 86 W.Va. 192, 103 S.E. 206, at page 208, 10 A.L.R. 951, which reads in part as follows:

"While the courts can take judicial notice of acts and resolutions of Congress, proclamations of the president, and conspicuously public acts of the heads of departments of the government, they cannot judicially know all that takes place in the departments * * * They were not matters of * * * general public interest. Hence it is manifest that the courts cannot judicially know what they were."

In the Spring case the whole issue was whether a demurrer should have been sustained to a complaint alleging negligent operation of a motor truck. Defendant had demurred upon the ground that its facilities had theretofore been taken over by the Federal Government and that the court would judicially know that fact by taking notice of the resolution and proclamation leading thereto. In ruling upon the demurrer the West Virginia Supreme Court said that while it would judicially know the fact that all telephone lines and poles were under federal control and management, it could not judicially know whether such was necessarily inclusive of every item of equipment owned and operated by the defendant, for the court could not be expected to judicially know the whole contractual conditions under which the facilities were taken over. The court therefore refused to take judicial notice of the particular departmental acts taken pursuant to the assumption of such control (e. g., what particular trucks were or were not taken over), and the overruling of the demurrer was affirmed. In State v. Bolen, 142 Wash. 653, 254 P. 445, 449, we find this relevant statement on the Spring case, supra:

"In Spring v. American Tel. & Tel. Co., * * * the court refused to take judicial notice of the conditions upon which the telephone and telegraph systems were taken over by the government during the war, *for the reason* that only the government and the proprietary companies had any special interest in that subject. * * *" (Emphasis ours.)

That Exhibit 5 is definitely of a public nature and interest can readily be ascertained on its very face whereon these words are ascribed:

"This standard is the established civil aeronautics Administration policy and shall govern all employees of the Civil Aeronautics Administration in their recommendations *to the public,* concerning airport traffic and taxi patterns." (Emphasis ours.)

The rule of the Spring case is therefore hardly applicable to Exhibit 5 herein, which, on its face, was a Technical Standard Order definitely of general public interest issued under proper authority as previously indicated.

██ Plaintiffs then claim that, having admitted Exhibit 5 into evidence, the trial court thereupon presupposed that Paradise Airport complied with the mandatory conditions set forth in promulgating rules and regulations in the absence of evidence to that effect. We feel that the trial court did no such thing. The fact of such compliance or noncompliance was a fact for the jury. Plaintiffs suggest that there was no evidence of such compliance, and that, in fact, there was evidence of noncompliance. Particularly they claim that a 'right

hand pattern was prescribed', that no approved field markings were displayed, and that no copies were furnished the CAA Safety agent. However, these matters do not preclude the fact that the jury was empowered to find that both Nicholson and Coyner, the primary actors in the collision, were acting pursuant to a set of rules theretofore posted at Paradise Airport by defendant Pemberton, and that both Nicholson and Coyner had knowledge of those rules. It is these rules, posted by Pemberton, under which Nicholson and Coyner were acting, and therefore the collateral question of whether the rules had been regularly posted in every technical respect was of no consequence whatever to the outcome of the case.

By way of analogy let us examine the case of Mitchell v. Emblade, 80 Ariz. 398, 298 P.2d 1034, wherein the plaintiff had been driving his motorcycle in an area where the speed limit was set at 25 mph by statute. However, a sign erected on the spot designated the speed limit as 35 mph. In that instance we held that the crucial question was not whether the sign had been lawfully erected, but whether it was there, and said that if the sign was there the plaintiff was entitled to rely upon it. At page 402, 298 P.2d at page 1036 this Court held:

"* * * Speed highway signs are for the purpose of advising the driving public and a driver is entitled to rely on their authenticity. He cannot be expected nor required to investigate and . determine whether such signs are placed there in the regular course of legal procedure. Cases cited. * * *"

The case further held that even if there were any irregularity in the establishment of such a sign, compliance with its requirements could not be negligence. The analogy of the Mitchell case, supra, to the instant case is plain. It is obvious that the posted airport rules are to pilots what highway signs are to motorists. Likewise, it is apparent that persons to whom the rules were directed could not be required to investigate the regularity of their placement and that each such person was entitled to rely upon them. The collateral issues mentioned above are therefore unnecessary to decide.

On the surface the third principal issue comprising plaintiffs' assignments of error 8, 12, 13, 14, 17 and 21 appear to be as follows: Is it error for the court to instruct on a theory where there is no evidence to support it? The answer to this question is very apparent, i. e., it is error for the court to so instruct. The question then becomes, did the court instruct the jury on a theory where there was no evidence to support it? To this question we must answer, no.

Plaintiffs insist that Marsh's instruction 35 requires the jury to legally conclude that rules and regulations were in force and ef-

fect and usurp the duty of the court. The instruction is set out as follows:

"You are instructed that if you determine under the evidence that there were rules and regulations promulgated by the airport manager, Mr. Pemberton, and that they were in force and effect at the time of the event in question, and you further find that Mr. Coyner landed in violation of those rules and regulations, then you are instructed that in that event Mr. Coyner did not have the right-of-way at the time and place in question."

It is obvious that this instruction does not require the jury to legally conclude anything. This was a matter of fact for the determination of the jury.

Plaintiffs further claim that there was no evidence that Coyner had lost the right of way given to him by the Civil Air Regulations, i. e., General Flight Rules, Sec. 60.-14(e), which read as follows:

"Landings, Aircraft, while on final approach to land, or while landing, have the right of way over other aircraft in flight or operating on the surface * * *."

On the contrary the record clearly indicates that the Coyner plane flew into the duster strip from south to north. The evidence further reveals that this procedure was entirely inconsistent to the required posted landing approach. Although the rule is that the landing aircraft has the right of way over all other aircraft, Sec. 60.14(e), supra, this right of way is forfeited where the landing plane does not fly a proper flight pattern and thus make its presence known to planes on the ground.

The facts before the trial court in Ratner v. Arrington, Fla.App., 111 So.2d 82, were quite similar to the instant case in that it was determined from the evidence that the Ratner airplane made a straight-in landing approach instead of the required pattern approach. The record in that case further disclosed that the pilot of the duster airplane on the ground (as in the instant case) looked out for and could have observed an approaching airplane in the required pattern, but the ground pilot did not see the Ratner plane coming into the field. Plaintiff, a passenger in the Ratner airplane, urged that Ratner had forfeited his landing "right of way" when he did not fly a proper traffic pattern, and that this action was a contributing proximate cause of the collision and that he was thus concurrently negligent with the duster pilot and liable for plaintiff's injuries. On appeal the award was affirmed. Indeed there was sufficient evidence to confirm the fact that Coyner did lose his right of way, Rule 60.14(e), supra, notwithstanding. The subsidiary questions whether Coyner fully completed his landing roll, and whether he thereupon taxied his plane straight up the strip simply

to transport himself to a desired part of the airfield are unnecessary to decide.

■ Plaintiffs next contended that defendant Marsh's instruction 8, to the effect that before beginning a flight a pilot should familiarize himself with all available information appropriate to the intended operations, was unsupported by any evidence. This instruction directed to a pilot about to begin a flight was obviously directed to Nicholson and not to Coyner. To leave such an instruction in the record places a greater burden on Nicholson than he would otherwise be required to sustain. Hence the instruction can not be said to be prejudicial to appellants. Plaintiffs claim that the trial court found this instruction erroneous, marked it 'Refused' but subsequently read it to the jury. We feel it unnecessary to discuss this contention further except to say that if, as plaintiffs claim, the trial court had intended to refuse this instruction, but read it to the jury accidentally, it was plaintiffs' clear duty to so advise the trial judge so that the jury might be advised of the inadvertence. By failing to so advise the court, plaintiffs have waived any error which they might otherwise have claimed.

■ We also feel that defendant Marsh's instruction No. 11 is a proper instruction and that there was sufficient evidence to support such an instruction. The instruction reads as follows: "You are in-structed that safe piloting requires that a pilot make as many turns as necessary before landing so as to be able to see what is on the ground below."

There is no question as to Underwood's take off prior to Nicholson. There is no question that this operation caused considerable dust on the premises. The evidence also discloses that even though certain witnesses said Coyner's plane first touched land in an obscured portion of the strip, the plane did subsequently roll into the dust.

Marsh's instruction No. 10 is clearly within the evidence introduced in the case. The landing strip was dust laden, the runway was not clear, and the attempted landing and/or taxiing did culminate in collision amidst the dust.

■ Plaintiffs next contended that Marsh's instruction No. 31 was erroneous for instructing the jury that evidence of physical facts might overcome witnesses' testimony. Plaintiffs assert that there were no physical facts which the jury might weigh in accepting or rejecting the testimony of witnesses. Substantial controversy centered around what could or could not be seen from the cockpit of aircraft of the type operated by Nicholson and Coyner. The record and exhibits indicate that defendants introduced real or demonstrative evidence consisting of photographs which were clearly competent to aid the jury in deciding for itself what the actual visibil-

ity from such aircraft might be. Indeed, this type of evidentiary reference to physical facts obtains equal force with testimonial evidence and the jury is entitled to weigh the testimonial evidence with this demonstrative type evidence at hand. We therefore find no error as to this instruction.

As the subject has been previously treated in this opinion, we find it unnecessary to further discuss plaintiff's reiterated claim that Coyner could not have been found guilty of wanton negligence.

 Therefore, although it is error for the court to instruct on a theory where there is no evidence to support such theory, we find that there was sufficient evidence to support the theories espoused by defendants on which the contested instructions were given.

 The fourth main question to be decided is whether (a) the instructions to the jury were so conflicting or contradictory as to be misleading and therefore gave rise to prejudicial error, (b) whether the instructions to the jury so erroneously stated the law as to be misleading and cause prejudicial error, and (c) whether the instructions though correct, because they gave abstract propositions of law, were misleading and prejudicial. See Krauth v. Billar, 71 Ariz. 298, 226 P.2d 1012. This question with its subheadings stems from assignments of error 3, 4, 5, 6, 7, 10, 15, 16, 18 and 19.

Plaintiffs' assignment of error No. 10 relates to defendant Marsh's instruction No. 25 which instructed the jury that if they:

1. Find rules and regulations were in effect requiring pilots to land from north to south; and

2. that deceased Coyner had knowledge of such, they must find for defendants.

Plaintiffs asserted that this instruction completely negates the purported protection afforded plaintiffs under the court's instruction which told the jury wanton negligence is a bar to contributory negligence. How, say the plaintiffs, can the Court in one instruction tell the jury that wanton negligence on the part of one of the defendants is a bar to Coyner's purported contributory negligence, and in another instruction tell the jury that if they find that Coyner is in effect guilty of contributory negligence by not obeying certain regulations, they must find for defendants? Plaintiffs state that without qualification by the Court and making the instruction dependent on other instructions which would enable the jury to consider the bar, instruction No. 25 was clearly contradictory, misleading, and prejudicial. For the same reasons plaintiffs premised other assignments of error aforementioned in relation to this question, i. e., 5, 6, 7 and 16. As previously indicated in this opinion, plaintiffs' requirements were satisfied by the trial court, wherein the court

did qualify the instructions and continually admonished the jury to consider the instructions as a whole unit.

■ Plaintiffs' assertion that the term 'sole negligence' was erroneously interjected in an instruction is without merit. The answer of defendants Paradise Airport and Pemberton was in the form of a general denial. It is well settled that a defendant in these circumstances may assert that an accident resulted from the sole negligence of a plaintiff for under such a general denial he may assert any state of fact inconsistent with the allegations of the complaint. Smith v. Kansas City Public Service Co., 328 Mo. 979, 997, 43 S.W.2d 548; see also Rules of Civil Procedure, 8 (b), 8(f). The issue of sole negligence was clearly made upon the pleadings as well as the evidence. It was therefore completely proper for the trial court to instruct on the same.

The consolidation of two cases in the trial court did not merge the two so as to make any defendant accountable for the acts of others. Therefore, Marsh's instruction No. 6 was not erroneous when it failed to include therein some reference to the possible concurring negligence of defendant Pemberton. If the plaintiffs desired a more explicit instruction, it was their obligation to submit an instruction applicable to the facts. Southern Arizona Freight Lines v. Jackson, 48 Ariz. 509, 63 P.2d 193; Kinman v. Grousky, 46 Ariz. 191, 49 P.2d 624; Mitchell v. Emblade, supra.

■ Plaintiffs' assignment of error No. 5 relates to Marsh's instruction No. 18 A, which instruction reads in part as follows:

"In order for the plaintiffs to establish any negligence on the part of the defendant Carl Nicholson the plaintiffs must show by a preponderance of the evidence that the alleged negligent conduct of Carl Nicholson was such that, acting as a reasonable and prudent man, he should have recognized that his acts created an appreciable chance of causing harm to one approaching, landing and taxiing in the manner of Mr. Coyner. * * *"

It is suggested that the language, " * * * one approaching, landing or taxiing in the manner of Mr. Coyner * * *" purported to limit foreseeability to the particular consequence and the precise form of the injury, together with limiting the accident as having occurred in a particular manner and to a particular person. We do not interpret the instruction as saying this. It merely forms a frame of reference in which the jury is to view the law as stated by the court. It is rather basic law that 'foreseeability' is not the mere possibility to divine that 'some' injury will occur, but there must be some reasonable basis for anticipating harm by reason of a particular act. Therefore, upon the facts of record, the foresee-

ability of Nicholson necessarily had to be tied in in some manner with Coyner's acts.

Plaintiffs' assignment of error No. 7 relates to Marsh's instruction No. 15 and No. 30, and repeats the argument previously discussed that these particular instructions exclude other elements which might have been applicable. We feel it unnecessary to speak further on this subject.

 Plaintiffs contended that Marsh's instruction No. 26 was erroneous inasmuch as it purported to limit custom or usage as binding on defendants only if it existed at Paradise Airport. We do not agree with this contention. Irrespective of the custom outside the airport, unless the custom obtained at Paradise Airport, the mere existence of such a custom would be wholly immaterial. Custom must be established over a considerable period of time, by numerous repetitious instances in order that there be no doubt with reference to its nature and character. Aurand v. Universal Carloading & Distributing Co. et al., 131 Pa.Super. 502, 200 A. 285, 286. Custom must be certain, uniform, and not a loose or variable practice or left to the discretion of the individual. 25 C.J.S. Customs & Usages § 4, pp. 79, 80. Paradise Airport duster strip was open for so few weeks as to make the establishment of any custom a legal impossibility. As stated in the case of Pierce v. Village of Ravena et al., 264 App.Div. 457, 36 N.Y.S.2d 42, 46:

" * * * Even in those cases where evidence of custom and usage is relevant it should be received merely for what it is worth in view of all the circumstances in the particular case * * *."

Therefore, we find no reversible error in this instruction.

Marsh's instruction No. 38 does not constitute sufficient basis for reversible error. Plaintiffs contended that this instruction was without basis in law. This instruction was based upon the Civil Air Regulations, General Flight Rule, Sec. 60.14(e), heretofore quoted. Though the rule does not clearly state the law as the instruction reads, it is apparent that the legal inference of this regulation is that if a landing pilot has the right of way while landing, then the privilege of immediate use of the runway for that purpose necessarily ceases upon completion of the landing. Nevertheless, we are not required to make such an inference for we have previously stated whether Coyner fully completed his landing roll, or whether he did not are issues upon which there was sufficient evidence available for the jury to determine that Coyner lost his right of way prior to that point.

The record discloses that plaintiffs failed to make objection to instruction No. 13 upon the specific ground now alleged. Accordingly, Rule of Civil Procedure 51(a), supra, is applicable and we need not consider the assignment.

As defendant Marsh's instruction No. 21 applied to both parties we do not see that the instruction was of such a prejudicial nature as to constitute reversible error.[1]

Plaintiffs cited the case of Glenn v. Chenowth, 71 Ariz. 271, 226 P.2d 165, 166, to support their Proposition of Law IV–C that, "instructions giving abstract propositions of law, even though correct, tend to be misleading and prejudicial." That case does state:

"* * * Abstract propositions of law even though correct are not favored * * *."

In the case of Wilkinson v. Phoenix Railway Co., 28 Ariz. 216, 236 P. 704, 705, this Court held:

"The rule against submitting abstract questions to the jury does not go to the extent of preventing the court from illustrating by appropriate references the issues in point."

We feel that the abstract instructions given in the instant case do not work prejudice to the plaintiffs. Pemberton's instruction No. 24 is unobjectionable upon the ground that it is explanatory and illustrative of the relative rights and duties of two independent actors, each of whom had been charged with proximate cause of the injury for which recovery was being sought. The instruction worked no prejudice under the Glenn rule for it was not a comment on the evidence or otherwise objectionable.

It is also urged that instruction No. 24 was confusing because the Court advised the jury that, regardless of the question as to which of the actors was guilty of negligence, the question of contributory negligence would remain if the jury found that doctrine applicable to the facts.

Plaintiffs' assignments of error Nos. 12 and 13 relate to the Marsh instructions Nos. 8 and 11 which have been amply reviewed in this opinion wherein no prejudice was found.

The fifth major question presented in the instant case applicable to assignments of error 20, 25, 26, 27, 28, 29, and 31, is whether the trial court failed to instruct the jury on the law under any theory of the case where evidence or reasonable inferences drawn therefrom supported such theory. A trial court is not warranted in refusing to instruct upon a theory which is supported by substantial evidence. However, as pointed out in Butane Corp. v. Kirby, supra, at page 280, 187 P.2d at page 331:

"* * * even though an issue is raised by the pleadings, it is not proper to give an instruction thereon where in the power of the party offering the same to produce stronger or more satisfactory evidence on that subject."

---

1. Instruction No. 21:
 "In weighing the evidence on any particular issue material to this cause you may consider whether or not it was with-

there is no basis for it in the evidence.
\* \* \*"

Plaintiffs assert that the trial court erred in instructing the jury that defendant Pemberton could not be found guilty of wanton negligence. In order for the court to have instructed that the jury could so find, there would have to have been sufficient evidence to support such a finding. In support of their theory plaintiffs point out the following statements made on deposition by defendant Pemberton the day after the accident as follows:

"Q. Do you direct the pilots as to the direction of their operation on a given day? A. No. The dusting is pretty much up to the duster pilots themselves. We request they land in such a way as not to interfere with the traffic of the airport itself when they take off.

"Q. Then it is largely each duster pilot's discretion as to which way he comes in and out? A. Yes. In most cases we have asked the dusters if the traffic is set to the southwest to land to the south and take off to the south.

"Q. And what was the traffic set last night? A. Well, as I say, there was really no traffic.

"Q. And you don't know how they were operating particularly? A. There is one point. The Marsh pilot who is from Washington and Oregon asked me and I told him that they generally landed to the south."

Elsewhere it was testified by Nicholson that Pemberton told him they landed from north to south, the word 'generally' was not used. Pemberton was away from the airport at the time of the accident. Therefore he did not have direct knowledge concerning the traffic set at that time. He gave answers at his deposition which to the best of his knowledge were correct. However, witness Nobles later testified at trial that the traffic was set for landings to the south. Also, in light of redirect examination the above testimony becomes more understandable. Defendant Pemberton therein testified that the duster pilots were not restricted to the use of the north-south runway and that duster pilots regularly used other runways of the airport but that the pilots had been requested as much as possible to use the north-south duster strip, wherein the regulations in effect required the landing and taking off to the south. Pemberton's only direct act in connection with the instant case was to tell defendant Nicholson to take off to the south. It is interesting to note that defendant Pemberton had on more occasions than one corrected Coyner for landing to the north of the runway. We conclude that this evidence does not evince such reckless conduct as to justify the 'wanton negligence' label. The facts, not the pleadings, are conclusive. Hence

the trial court correctly ruled that defendant Pemberton's conduct was not that of a man who had acted with reckless disregard of the rights of others or a reckless indifference to results.

Plaintiffs next assign as error failure of the trial court to give certain instructions. Having failed to discuss these assignments they are waived.

As the matters contained in plaintiffs' assignments of error Nos. 28 and 29 have been previously discussed further treatment of same is unnecessary.

Assignment of error No. 29 relates to the failure of the trial court to grant plaintiffs' requested instructions Nos. 20 and 25, and through 30A inclusive or any of them. Though plaintiffs argue that there was ample evidence and reasonable inferences to be resolved by the jury as to defendants' negligence arising from breach of statutory duties and nonconformance with operational standards prevailing in crop dusting. We cannot agree. We have thoroughly reviewed the record and feel that the trial court's action in this regard was not prejudicial.

If, the plaintiffs state, the trial judge consented to give but inadvertently omitted to read plaintiffs' instruction No. 8–A, such inadvertence cannot be ascribed as reversible error, especially when plaintiffs failed to direct the judge's attention to the matter.

■ The sixth principal question presented is whether improper evidence was admitted and/or improper instructions of law were given which tended to mislead the jury or from which passion and prejudice could be presumed. The law in this jurisdiction, as declared in Valley Transp. System v. Reinartz, 67 Ariz. 380, 383, 197 P.2d 269, 270, is very clear that:

"* * * Passion and prejudice are presumed to exist where improper evidence is admitted upon which the jury might act or improper instructions of law are given which might mislead the jury. Cases cited."

The facts of this case do not disclose any indication of this type of error.

■ Plaintiffs argue that the trial court improperly granted a motion to quash their notice proposing to take an out-of-state deposition, which notice contemplated the deposing of a foreign witness at the very time while the trial was in progress. The notice was not timely. Plaintiffs' counsel were aware that the information was available prior to the trial date and at that time did not deem such information important enough to acquire. This is a matter of personal judgment which once made should not later, merely for a change of mind, burden the court at trial date. We feel that the trial judge properly exercised his discretion in the matter.

■ Assignment of error No. 33 asserted by plaintiffs contains some twelve subdivisions of which only divisions (d) and (k) were argued. In subdivision (d) plaintiffs claimed error due to the trial court's allowance of evidence of earnings of the plaintiff corporation subsequent to Coyner's death and the admission of the personal wages of Coyner's widow, Bess Coyner. In subdivision (k) plaintiffs claimed it was highly prejudicial to plaintiffs to allow the reading of 'Petition for Letters Testamentary' from deceased Coyner's estate file. There is some conflict of authority as to the admissibility of this type of evidence. The better view is that such evidence is inadmissible if it tends to influence the jury's verdict as to liability. Cf. 25 C.J.S. Damages § 99, p. 649; 17 C.J., p. 930, note 30. However, such evidence has been held to be nonprejudicial if the court in its charge to the jury admonishes the jury not to allow any bias, prejudice, or sympathy to influence its judgment. Wiest v. Twin City Motor Bus Co., 236 Minn. 225, 52 N.W.2d 442. Such an admonition was given the jury in the instant case.

■ It also appears that the disputed evidence in this case goes only to the issue of damages. An appellate court does have power in an appropriate case to remand only for redetermination of the amount of damages, excluding from the scope of a new trial the question of liability. Geffen v. Winer, 100 U.S.App.D.C. 286, 244 F.2d 375. As the jury did not have to consider the issue of damages in view of its decision to return a verdict in favor of all of the defendants upon the issue of defendants' liability, we find that there was not prejudicial error sufficient to remand the cause. Nor does the cumulative effect of the remaining subdivisions of Assignment No. 33 deprive the plaintiffs of a fair and impartial trial. The fairness of the trial is more than amply illustrated in the five volumes of testimony and the many exhibits received by this Court.

The judgment of the trial court is affirmed.

STRUCKMEYER, C. J., and UDALL, J., concur.

BERNSTEIN, V. C. J., dissents.

Note: The Honorable Justice LOCKWOOD, being disqualified, did not participate in the determination of this appeal.